**SCHENLEY DISTILLERS CORPORATION et al. v. UNITED STATES et al.**

Civil Action No. 300.

District Court, D. Delaware.

June 16, 1943.

Charles E. Cotterill, of New York City, and Charles F. Richards (of Richards, Layton & Finger) of Wilmington, Del., for plaintiffs.

Robert L. Pierce, Sp. Asst. to Atty. Gen., Dept. of Justice, and Stewart Lynch, U. S. Atty., of Wilmington, Del., for the United States.

J. Stanley Payne, Asst. Chief Counsel, ICC, of Washington, D. C., for the Interstate Commerce Commission.

Before BIGGS and MARIS, Circuit Judges, and LEAHY, District Judge.

BIGGS, Circuit Judge.

The petitioners have filed suit against the United States of America and the Interstate Commerce Commission and pray this court

to determine whether certain motor vehicle operations of Schenley Distilleries Motor Division, Incorporated, (hereinafter called Motor Division), do or do not constitute carriage of property for hire by motor vehicle in interstate commerce so as to be subject to the provisions of part II of the Interstate Commerce Act, the Motor Carrier Act 1935, 49 Stat. 543, as amended, 49 U.S.C.A. §§ 301–327; and to adjudicate the question whether the approval of the Interstate Commerce Commission of these operations is or is not required by law. It is requested further that this court determine " * * * that the action of the Commission in concluding otherwise and requiring * * * [Motor Division] not to engage in such operations without its approval was and is beyond the authority of the Commission and that the order or orders [of the Commission] to that effect[1] be annulled and set aside * * * " and that the Commission be enjoined from enforcing its order. The petition concludes with a prayer in the usual form for a temporary injunction and for such other relief as the facts may warrant.

■ The suit is brought pursuant to the provisions of the Urgent Deficiencies Act, 28 U.S.C.A. § 41(27), (28) and Secs. 43–48. Upon the filing of the petition the District Judge constituted this court by calling to his assistance two other judges, both of whom are circuit judges, to hear and determine the cause. The Interstate Commerce Commission has filed an answer in which the United States has joined. The last paragraph of this answer is a motion to dismiss the petition on the ground that its allegations present no justiciable controversy within the jurisdiction of this court as it is at present constituted under the Urgent Deficiencies Act. This motion was argued at length and the Court refused to receive the proffered testimony of petitioners' witnesses. The allegations of the petition and its accompanying exhibits must therefore be treated as if true for the purposes of the motion.

It appears from the petition that Schenley Distillers Corporation (hereinafter called Schenley) is engaged in the sale of alcoholic beverages at wholesale. It is the parent corporation or has control of a number of other corporations engaged in the manufacture of alcohol and liquor. Motor Division, a Delaware corporation, a wholly owned subsidiary of Schenley, was formed to enable Schenley and its subsidiaries to continue the distribution of their products and to procure supplies for manufacturing alcohol and liquor by truck under war conditions. The petition alleges that the title to all freight carried by Motor Division is and will remain, in Schenley or its subsidiaries and that no bills of lading are or will be issued by Motor Division. The petition alleges that the Schenley management does not consider the proposed carriage to be carriage for hire, but none the less an application for temporary authority to engage in these operations as a contract carrier was filed with the Interstate Commerce Commission and it was prayed that the Commission issue a temporary order authorizing the operations if they were within the purview of the Motor Carrier Act of 1935, as amended September 18, 1940, 49 U.S.C.A. §§ 301–327. Motor Division also prayed the Commission to dismiss its application since, allegedly, its transportation operations constitute private carriage and are beyond the purview of the statute.

In fact two applications are attached to the petition in this case and both were filed with the Commission by Motor Division. One,[2] the first, is for a permit under Section 209 of the Motor Carrier Act, 49 U.S.C.A. § 309. This was not acted upon by the Commission for reasons that will be immediately apparent. The second applica-

---

[1] The Commission did not make any order requiring Motor Division not to engage in its proposed transport operations without the approval of the Commission. See Note 4 infra. It is the effect of the refusal of a certificate of temporary authority pursuant to the provisions of Sec. 210a(a) of the Motor Carrier Act, 49 U.S.C.A. § 310a(a), of which the petitioners complain. Since the relief which the petitioners seek is sufficiently plain from the pleading, we have decided not to delay the disposition of the cause in order to allow an appropriate amendment.

[2] The last paragraph of the exhibit accompanying this application states: "It is respectfully prayed that this be considered and treated as an application for a contract carrier permit, that a temporary permit be issued, and that upon final hearing any question as to whether the operation is 'private' or contract carriage may then be determined. In the meanwhile the operations may be conducted without controversy as to their legality."

tion was a request for temporary authority under Section 210a(a) of the Motor Carrier Act, 49 U.S.C.A. Sec. 310a(a). Both applications were filed by Motor Division on June 3, 1942. On July 15, 1942, the Commission notified Motor Division by letter, stating that it would construe the applications as a request for temporary authority to engage in motor transport pursuant to the provisions of Section 210a(a) of the Act.[3] The course proposed by the Commission was acquiesced in by Motor Division. On July 24, 1942, the Commission by Division 5, arriving at its conclusions from the allegations of the application without hearings or other proceedings, denied the request of Motor Division for a certificate of temporary authority. This is the order which the petitioners seek to have set aside. It is set out in the margin.[4] An application for rehearing was denied on October 23, 1942, by the full Commission.

As we have stated, the application on which the Commission acted was one requesting "temporary authority" to conduct the operations described in the application.[5] Section 210a(a) gave the Commission power to pass upon applications arising because of emergency. The section provides that the Commission may pass upon an application and grant or dismiss it " * * * in its discretion and without hearings or other proceedings * * * ".[6] The application set forth no facts which show or disclose "an immediate and urgent need" for motor carriage "to a point or points within a territory having no carrier service capable of meeting such need."[7] The Commission found that there was no such need and it is a fact that there are many railroads and motor carriers serving those points in the United States to which the application was directed. But the real gravamen of the petitioners' complaint, as

---

[3] The letter states, in part,

"Reference is made to your [Motor Division's] application on Form BMC 73 received by this Commission on June 4, 1942, and assigned Docket No. MC 103763.

"Upon further review of your application it seems advisable to consider it as a request for temporary authority, which if granted would extend to December 31, 1944. We are, therefore, amending your application as a request for temporary authority * * * ".

[4] The order of the Commission is as follows:

"After due investigation:

"It appearing, that applicant in accordance with the provisions of Section 210a (a) of the Interstate Commerce Act, as amended, made application for temporary authority to operate as a motor carrier in interstate or foreign commerce, from 14 points in the States of New Jersey, Pennsylvania, Maryland, Indiana, and Kentucky, to all points and places in 19 different States and the District of Columbia:

"It further appearing, That the said applicant has not established that there exists an immediate and urgent need for service to a point or points or within a territory having no carrier service capable of meeting such need; and the Commission so finding; therefore,

"It is ordered, That the said application be, and it is hereby, denied."

[5] This application asked leave to institute new operations as a contract carrier (if the carriage was in fact contract carriage) for certain classes of commodities or property from points in New Jer-

sey, Pennsylvania, Maryland, Indiana and Kentucky to points as specified in paragraph 2 of the answer.

[6] Section 210a(a), 49 U.S.C.A. § 310a, provides in part: "To enable the provision of service for which there is an immediate and urgent need to a point or points or within a territory having no carrier service capable of meeting such need, the Commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common carrier or a contract carrier by motor vehicle, as the case may be."

Section 210a(a) was added as a new section to the Motor Carrier Act of 1935, 49 Stat. 543, and is now part II of the Interstate Commerce Act, by the amendment of June 29, 1938, 52 Stat. 1238. The section was again amended by the Act of September 18, 1940, 54 Stat. 923. As originally enacted it authorized the Commission to grant temporary operating authority for a period aggregating not more than 180 days. The section was amended by the second War Powers Act 1942, 56 Stat. 177, so as to delete the words "but for not more than an aggregate of one hundred and eighty days." The War Powers Act 1942 expires by its own terms on December 31, 1944, 50 U. S.C.A. Appendix, § 645. The Commission construed the act as not authorizing it to grant temporary authority for a period extending after that date.

[7] The petition for rehearing alleges in general terms conditions which might tend to show a need for additional service by motor carrier between the points specified in the applications.

494

stated by their counsel at the argument, was that the Commission made no determination of the question of whether or not the operations described in the applications constituted contract carriage or private carriage. The petitioners contend, relying on the decisions of the Supreme Court in Rochester Tel. Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147, and Mitchell v. United States, 313 U.S. 80, 61 S.Ct. 873, 85 L.Ed. 1201, that because the Commission failed to determine that Motor Division is either a contract carrier or a private carrier, they are compelled to take the risk of operating illegally, incurring penalties if it be subsequently determined that Motor Division is engaged in contract carriage within the purview of the Motor Carrier Act. We will discuss this contention at a later point in this opinion.

The petitioners go further, however. They say that the Commission in denying Motor Division's application for a certificate of temporary authority had to pass on the nature of Motor Division's contemplated operations, since otherwise it would not have had authority either to grant or to deny the applications. The Commission did not make an order denying Motor Division the right to carry on the operations described in the application based on Section 209 of the Motor Carrier Act. For the reasons heretofore stated it did not pass upon that application of Motor Division which requested the permit authorized by Section 209. It merely denied Motor Division a certificate of temporary authority under Section 210a(a).

It was not necessary for the Commission to determine Motor Division's status as either a private carrier or a contract carrier or to determine that it had jurisdiction of Motor Division under the Motor Carrier Act in order to deny to it a certificate of temporary authority. From the words of Section 210a(a) one must conclude that Congress intended the Commission to consider an application based on Section 210a(a), as if the jurisdiction of the Commission under the Act was in fact conceded by the applicant. If it were not so, the Commission, without hearings or proceedings, could not pass on such applications with the dispatch which an emergency requires. Congress contemplated that a contract or common carrier would come forward and request the Commission to grant a certificate of temporary authority and make a showing on the face of the application that existing carrier facilities within the area are inadequate. The Commission must assume that the applicant is either a common or a contract carrier and is required to pass only on the question of the existence of an emergency requiring additional service by motor carrier. This is the jurisdiction granted to the Commission by Congress by Section 210a(a).[8]

The United States and the Commission contend that this court, as now constituted of three judges under the provisions of the Urgent Deficiencies Act and possessing only limited jurisdiction,[9] cannot set aside the order of the Commission complained of. Our jurisdiction depends on whether the the order of the Commission is one which can be set aside or suspended within the purview of the Act of October 22, 1913. The order of the Commission is a "negative" order in that it denies a certificate of temporary authority to Motor Division.

[8] The situation possesses an analogy to one which exists in a court of equity when an application is made for a restraining order, the facts allegedly constituting the basis of the restraint being set forth in affidavits. The court without passing upon the question of jurisdiction, which may not have been raised at that stage of the proceeding, may deny the application for a restraining order upon the ground that the complainant has not set forth facts in the affidavits which would warrant the issuance of the writ.

[9] Our jurisdiction is prescribed by the Act of October 22, 1913, 38 Stat. 219, 28 U.S.C.A. § 47, which provides in part that: "No interlocutory injunction suspending or restraining the enforcement, operation, or execution of, or setting aside, in whole or in part, any order made or entered by the Interstate Commerce Commission shall be issued or granted by any district court of the United States, or by any judge thereof, or by any circuit judge acting as district judge, unless the application for the same shall be presented to a circuit or district judge, and shall be heard and determined by three judges, of whom at least one shall be a circuit judge, and unless a majority of said three judges shall concur in granting such application. * * * and upon the final hearing of any suit brought to suspend or set aside, in whole or in part, any order of said commission the same requirement as to judges and the same procedure as to expedition and appeal shall apply."

The tests governing judicial review of orders under the Urgent Deficiencies Act were defined by the Supreme Court in United States v. Los Angeles & S.L.R. Co., 273 U.S. 299, 309, 310, 47 S.Ct. 413, 414, 71 L.Ed. 651. The question which was before the Commission and which came before the three-judge court in the cited case was the accuracy of the valuation of railroad property pursuant to Section 19a of the Interstate Commerce Act, 49 U.S.C.A. § 19a. The Supreme Court held that the order of the Commission did not finally determine any legal rights and stated that " * * * there are many orders of the Commission which are not judically reviewable under the provision now incorporated in the Urgent Deficiencies Act * * * ", citing Procter & Gamble Co. v. United States, 225 U.S. 282, 32 S.Ct. 761, 56 L.Ed.1091; Lehigh Valley R. Co. v. United States, 243 U.S. 412, 37 S.Ct. 397, 61 L.Ed. 819, and other cases. The Supreme Court went on to state: "The so-called order here complained of is one which does not command the carrier to do, or to refrain from doing, anything; which does not grant or withhold any authority, privilege or license; which does not extend or abridge any power or facility; which does not subject the carrier to any liability, civil or criminal; which does not change the carrier's existing or future status or condition; which does not determine any right or obligation." In the case at bar by reason of the provisions of Section 209 of the Motor Carrier Act, 49 U.S.C.A. § 309, Motor Division cannot engage in the business of a contract carrier in interstate commerce unless a permit be granted to it under the provisions of Section 209 or unless it obtains a certificate of temporary authority under Section 210a(a). If it is a contract carrier and it does engage in interstate transportation without a permit or certificate of temporary authority, it is subject to the penalties prescribed by Section 222 of the Act, 49 U.S.C.A. § 322. It is obvious, therefore, that the order of the Commission in the case at bar meets two of the negative tests imposed in the Los Angeles Railroad case in that the action of the Commission does grant or withhold an authority, a privilege or a license, and if Motor Division is a contract carrier the withholding of a certificate of temporary authority does subject that carrier to liability, both civil and criminal.

In Shannahan v. United States, 303 U.S. 596, 58 S.Ct. 732, 82 L.Ed. 1039, the Supreme Court affirmed a decree of a three-judge court constituted under the Urgent Deficiencies Act on the ground that the court lacked jurisdiction of a suit brought by an interstate electric railway subject to the Interstate Commerce Act, to set aside a determination of the Commission made at the request of the National Mediation Board under the Railway Labor Act, as amended June 21, 1934, 48 Stat. 1185, 45 U.S.C.A. § 151 et seq., to the effect that the railway was not within the exemption proviso of Section 1 of the Railway Labor Act. Mr. Justice Brandeis, delivering the opinion of the Supreme Court, stated, 303 U.S. at page 599, 58 S.Ct. at page 734, 82 L.Ed. 1039: "The decision neither commands nor directs anything to be done. 'It was merely preparation for possible action in some proceeding which may be instituted in the future.' United States v. Los Angeles & S.L.R. Co. * * *. The determination is thus not enforceable by the Commission; the only action which could ever be taken on it would be by some other body. It is as clearly 'negative' as orders by which the Commission refuses to take requested action. * * * As such, it is not reviewable under the Urgent Deficiencies Act." Mr. Justice Brandeis cited in a footnote in support of this view Procter & Gamble Co. v. United States, supra, Lehigh Valley R. Co. v. United States, supra, and other cases to the same effect.

The Procter & Gamble case was overruled by the decision of the Supreme Court in Rochester Tel. Corporation v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147. The rule in United States v. Los Angeles S.L.R. Co., supra, is still the law.

In the Rochester Telephone Corporation case, the Supreme Court had before it a controversy growing out of a ruling by the Federal Communications Commission that Rochester Telephone Corporation owed obedience to a series of orders issued by the Commission. The Supreme Court was dealing with an appeal under Section 238 of the Judicial Code, as amended, 28 U.S.C.A. § 345, from a final decree by a district court of three judges under the Urgent Deficiencies Act, 28 U.S.C.A. §§ 45, 47a, as extended by Section 402(a) of the Federal Communications Act, 47 U.S.C.A. § 402(a), dismissing on the merits a petition to review an order of the Federal Communications Commission. The orders of the Commission complained of required all telephone carriers subject to the Federal Communications Act to file schedules of

496

their charges, copies of their contracts with other telephone companies and other information. Rochester took the position that it was outside the requirements of the Act, but the Commission determined that it was under the "control" of the New York Telephone Company, and therefore was not entitled to the classification of a mere connecting carrier under Section 2(b) (2) of the Act, 47 U.S.C.A. § 152(b) (2). Rochester filed a bill in the District Court for the Western District of New York to have the orders of the Commission set aside and annulled. The District Court held that the company did not come within the exception set forth in Section 2(b) (2) of the Act and it appealed. The Supreme Court took the occasion to discuss the doctrine of "negative orders" or orders vel non at length. Mr. Justice Frankfurter stated that the doctrine of the "negative order" as theretofore applied by the federal courts had not been realistic. He divided the "negative order" doctrine into three categories. The second of these categories is as follows, 307 U.S. 129, 59 S.Ct. 756, 83 L.Ed. 1147: "Where the action sought to be reviewed declines to relieve the complainant from a statutory command forbidding or compelling conduct on his part. The most obvious case is a denial of permission by the Interstate Commerce Commission for a departure from the long-short haul clause."

▆ In our opinion the action of the Commission in the case at bar is precisely within the second category of the Rochester case. Categories (1) and (3) as set forth by Mr. Justice Frankfurter need not be discussed here. In the case at bar the statutory provisions for review, the terms of the order and the nature of the petitioners' objections to it all seem to meet the tests established in the Rochester case. We would conclude, therefore, without additional authority, that the order of the Commission denying the certificate of temporary authority to Motor Division is a reviewable order by this court as constituted under the Urgent Deficiencies Act, but our assurance in this respect is confirmed by the decision of the Supreme Court in Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563. This case need not be discussed in this opinion since what it says is not strictly pertinent to the issue here sub judice. It is enough to say that the decision of the Supreme Court establishes in courts of the United States constituted under the Urgent Deficiencies Act even broader powers to set aside or annul negative orders or orders vel non or regulations purportedly having the effect of such orders, than did Rochester Telephone Corporation v. United States, supra.

▆ The relief sought in the case at bar will not be granted, however. Our decision must be governed by the scope of the provisions of Section 210a(a). The right of the Commission to grant or refuse a certificate of temporary authority was expressly placed within its discretion by Congress. We have before us a statute where the action of the administrative body is subject to review only when its conclusions are arbitrary or capricious or where it has acted without authority of law or has committed an error of law.[10]

▆▆ The petitioners do not allege that the Commission has deprived Motor Division of any right without due process of law, or that it has acted without authority of law. They do not even contend that the Commission has acted arbitrarily or capriciously. The petition alleges only that the Commission has committed an error of law under the circumstances alleged in the petition. In this respect, the petitioners allege in reality nothing more than that the Commission has failed to rule on the question: Is Motor Division a contract carrier or a private carrier? Our view is that the Commission was not compelled to rule on this question nor is the answer to it within our jurisdiction.[11] We think that the Commission has acted in accordance with existing law. It follows that the petitioners have shown no cause of action. The petition will be dismissed. An order may be submitted.

[10] See the discussion of the types of statutes governing the performance of administrative and executive duties in the opinion of Mr. Justice Stone in Dismuke v. United States, 297 U.S. 167, at page 172, 56 S.Ct. 400, at page 403, 80 L.Ed. 561, and the more limited discussion of a similar nature in the opinion of the Court of Appeals for this Circuit in Wilson et al. v. United States, 135 F.2d 1005.

[11] The decision of the Supreme Court in the case of Texas & P. R. Co. v. Gulf C. & S. F. R. Co., 270 U.S. 266, 46 S.Ct. 263, 70 L.Ed. 578, cited by the petitioners, supplies no applicable analogy to the case at bar.