**KANSAS CITY & LEAVENWORTH TRANSP. CO. v. UNITED STATES et al.**

Civil Action No. 313.

District Court, D. Delaware.

Sept. 21, 1943.

C. S. Layton (of Richards, Layton & Finger), of Wilmington, Del., and Frank H. Terrel, of Kansas City, Mo., for plaintiff.

Stewart Lynch, U. S. Atty., and W. Thomas Knowles, Asst. U. S. Atty., both of Wilmington, Del., Tom C. Clark, Asst. Atty. Gen., and Edward Dumbauld, Sp. Asst., for the United States.

Daniel W. Knowlton, Chief Counsel, of Washington, D. C., and Allen Crenshaw, of Birmingham, Ala., for Interstate Commerce Commission.

James R. Morford, of Wilmington, Del., and H. H. Larimore, Toll R. Ware, and George W. Holmes, all of St. Louis, Mo., for Missouri Pacific Transp. Co.

Before BIGGS, Circuit Judge, and KALODNER and LEAHY, District Judges.

LEAHY, District Judge.

This case arises under the provisions of the Urgent Deficiencies Act, 28 U.S.C.A. §§ 43–48, wherein plaintiff, The Kansas City & Leavenworth Transportation Company, seeks to set aside or enjoin an order of the Interstate Commerce Commission whereby Missouri Pacific Transportation Company (herein called "Missouri Pacific") is about to be granted a permanent certificate as a common carrier by motor vehicle, pursuant to Sec. 207(a) of Part II of the Interstate Commerce Act, 49 U.S.C.A. § 307(a). The Commission found not only present and future public convenience and necessity, but that Missouri Pacific qualified. Plaintiff claims that the Commission has erroneously interpreted the law, has

acted arbitrarily, and that no substantial evidence supports its findings.

On April 9, 1942, Missouri Pacific sought a certificate authorizing operation, as a common carrier by motor vehicle of passengers and their baggage—and of express and mail in the same vehicle with passengers—between the Post Exchange Building on the military reservation at Fort Leavenworth, Kansas, and the junction of U. S. Highway 73 and Kansas Highway 92, over Government streets and Kansas Highway 92.

Missouri Pacific operates as a common carrier by motor vehicle of passengers and their baggage, over other regular routes, including routes between Kansas City, Missouri, and Omaha, Nebraska, and between Kansas City and Topeka. One route between Kansas City and Omaha takes in the segment of U. S. Highway 73 between Leavenworth and Atchison, Kansas, and this highway parallels one boundary of the military reservation. The nearest entrance to Fort Leavenworth from U. S. Highway 73 is over Kansas Highway 92. Missouri Pacific sought, therefore, authority to operate over Kansas Highway 92 to the entrance and over the streets within the reservation to the two points already mentioned—the post exchange and the induction center. By order of July 3, 1942, Missouri Pacific was also granted a certificate of temporary authority, pursuant to Sec. 210a(a) of the Interstate Commerce Act, 49 U.S.C.A. § 310a(a), to operate, serving the site of Fort Leavenworth.

Plaintiff for many years operated an interurban transportation service between Kansas City and Leavenworth, including the military reservation of Fort Leavenworth, through its wholly owned subsidiary (The Leavenworth Transportation Company). Originally, this was a street railway service, but in recent years it has been changed to motor busses. Its bus service between Leavenworth and Fort Leavenworth includes 76 trips a day from and to points within the military reservation. Admittedly, its service is efficient. For many years it has enjoyed the exclusive right to operate within the reservation.

The facts adduced before the Commission show that during the present emergency Fort Leavenworth has been extended and now includes the induction center—actually outside the permanent post—where draftees report for entrance into the Army. The center is a group of barracks erected to house these former civilians. They are held here for several days until they are classified. Under its temporary certificate, Missouri Pacific has transported many such draftees to the center. After induction, draftees may enter the Fort, where the post exchange is located. Once classified, however, the draftees are then shipped to some regular army camp or those disqualified are sent home. The Fort is a permanent Army post. In fact, Army schools are maintained there in times of peace. Officers from all over the country travel to and from the Fort attending these schools. They travel from or to points reached by the bus or rail service of Missouri Pacific.

The evidence before the Commission shows that passengers from or to distant points must transfer from or to Missouri Pacific busses or trains in Kansas City, Leavenworth, or at the junction of U. S. Highway 73 and Kansas Highway 92. In each case, passengers must transfer to or from busses of plaintiff in order to reach or leave the post exchange or other parts of the Fort. Such transfer includes baggage of passengers. At a distance of 1½ miles from the post exchange, as stated before, the regular route of Missouri Pacific runs parallel with one of the boundaries of the Fort. Missouri Pacific is a subsidiary of Missouri Pacific Railroad. As auxiliary to its rail service, it has provided motor transportation throughout the central west for years. Under authority of the Commission, it operates motor bus passenger service over lines in that area, i.e., between Kansas City, Missouri, and Omaha, Nebraska, through Leavenworth, Kansas.

The Commission has stated it is ready to issue a permanent certificate to Missouri Pacific, concluding that there was sufficient proof of public convenience and necessity to merit such issuance; but that it would withhold such issuance until the case at bar was determined. Plaintiff makes the following contentions:

■ I. The Commission has failed to interpret correctly the provisions of Sections 207(a) and 210a(a) by deciding to grant a certificate of permanent authority for what plaintiff alleges is a temporary need. But, this proposition, it seems to us, relates in the end to the basic question as to whether upon the record before the

Commission there was substantial evidence to support a finding that present or future public convenience and necessity justified the granting of the certificate for permanent authority to Missouri Pacific for the extension of its service from Leavenworth to serving the site of the military reservation of Fort Leavenworth.[1]

Plaintiff's real complaint is that the Commission failed to distinguish between temporary and permanent needs. It argues that temporary authority may be provided under Sec. 210a(a) of the Act, 49 U.S.C.A. § 310a(a). Under this section the Commission, without hearing, and in its discretion, may grant such authority, where there is urgent need therefor. Schenley Distillers Corporation v. United States, D.C.Del., 50 F.Supp. 491. Originally, this authority was limited to 180 days. However, this provision was stricken by an amendment to Sec. 210a(a) found in Title I of the Second War Powers Act, 50 U.S.C.A. Appendix § 631a. This amendment will remain in effect until December 31, 1944, 50 U.S.C.A. Appendix § 645. As the war may terminate by December 31, 1944, and as the use of the transportation facilities by inductees and other members of the armed forces will then most likely decrease, plaintiff contends that the Commission erred in treating the application other than as a temporary one. In short, plaintiff argues that the Commission, from the evidence before it, could not decide on the necessity for a certificate of permanent authority under Sec. 207(a); but at the most, it should have granted a temporary certificate under Sec. 210a(a) or until December 31, 1944.[2]

There are two answers to this contention.

First, the amendment found in the Second War Powers Act merely extends the time during which a certificate of temporary authority may be granted by the Commission. It was not contemplated that this amendment would affect the existing power of the Commission to grant a certificate under Sec. 207(a).[3] We think that the Commission had power to entertain the present application under Sec.

---

[1] We, of course, may review the evidence in order to ascertain if there was "substantial evidence" to support the Commission's finding. Inland Motor Freight v. United States, D.C., 36 F.Supp. 885. In the course of such review, other rules must be applied, viz., that the burden is upon an applicant to show that present service is inadequate and that there exists a public demand for the proposed service. Isadore Karzen Contract Carrier Application, F.C.C. ¶30,116.02; John Joseph Norton Application, 1 M.C.C. 114; Bluenose Bus Co., Ltd., Application, 1 M.C.C. 173; Leonard Crumpacker Application, 4 M.C.C. 264; Hagerstown Motor Express Application, 3 M.C.C. 786; Tri-State Transit Company of Louisiana, Inc., 29 M.C.C. loc. cit. 401; Boss Truck Lines, Inc., 28 M.C.C. loc. cit. 74; Alton R. Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 86 L.Ed. 586.

[2] The Commission's position here is that the authority granted Missouri Pacific was simply as an "off route service in connection with applicant's present regular route operations"; and the authority is to deliver and take passengers from or to the Fort, who travel from distant points, without the necessity of transfer of passengers and baggage from plaintiff's bus line or from railroads to plaintiff's busses or by vehicles furnished by the military authorities.

[3] Legislative history discloses that the function of the amendment was to increase, not diminish, the Commission's powers. See, statement of Mr. McLaughlin in the House of Representatives on Feb. 24, 1942, Cong. Rec. 77th Cong., 2nd Sess. p. 1586; "Title I of the bill confers upon the Interstate Commerce Commission the same emergency powers over motor carriers which the Interstate Commerce Commission now has over railroads under section 15, part 1, of the Interstate Commerce Act. Under these powers the Interstate Commerce Commission is authorized to suspend the ordinary lengthy procedure involved in Interstate Commerce proceedings and to make directions with respect to the operation of railroads so as to permit speedy movement of traffic by means of directions for preference and priority of movements. This power is very definitely needed in wartime because of the dangers of congestion in traffic and the necessity for permitting delivery of necessary materials. Under the existing law the emergency powers of the Interstate Commerce Commission over railroads and water carriers is limited to a period of 180 days. Under Title I of the Act these powers are extended to cover the period covered by the Act. On the termination of the emergency the 180 days' restriction will be reinstated."

See also comments of Senator O'Mahoney in the Senate on January 26, 1942, Cong. Rec. 77th Cong., 2nd Sess. p. 622; and S.Rep. 989 and H.Rep. 1765.

207(a) and properly granted the certificate thereunder.

■■ Second, we think that Sec. 210a(a) must be considered in the light of Section 207(a). Under the latter section applications for certificates of authority are based on "present and future" public convenience and necessity. There is no requirement of proof of permanent public convenience and necessity. Considering the two sections and what each was designed to accomplish, we think Congress, in its experience, saw that public convenience and necessity would, at times, become so urgent as to require transportation facilities without waiting for hearing and decision under Sec. 207(a). Accordingly, it enacted Sec. 210a(a), which provides for the issuance of a certificate for immediate need. Such immediate necessity is designed to cover that period which may elapse before the Commission issues a certificate under Sec. 207(a). The statute contemplates, as we pointed out in Schenley Distillers Corporation v. United States, supra, an ex parte disposition of the Sec. 210a(a) application in the Commission's discretion. What the plaintiff asserts is that the authority provided for under Sec. 210a(a) must be restricted to granting a certificate for periods of time, say a matter of months, until the temporary need disappears. We reject plaintiff's contention that where the need is temporary and not permanent the Commission is limited to issuing a certificate under Sec. 210a(a). We think that Sec. 207(a) authorizes the Commission to grant a certificate where present and future public convenience and necessity are shown—be it temporary or permanent. What state of facts actually requires a certificate of permanent or temporary authority must be left to the expert administrative tribunal, viz., the Commission.

II. Evidence before the Commission. Plaintiff insists that the evidence relating to need of service to the induction center lacks proof of public demand and, at the most, simply shows a need, if any, temporary in nature—i. e., the demand is not constant, regular or normal.

■ Either in war or in peace it is always difficult to fix limits to the word "temporary". Obviously, the present need is co-extensive with the war; and neither the Commission nor we are expert enough to prognosticate the terminal date of the present conflict, or whether Fort Leavenworth, as an incident of the peace, will be permitted to house a greater or lesser military force than that now housed there. But, for our purposes, it has been shown that there is a need for the service to draftees destined to the induction center and that Missouri Pacific's facilities are convenient for both draftees as well as for those attending the officers' school and whose origin or destination when travelling to or from the Fort is beyond Kansas City. Without such service, transfers are required to plaintiff's busses by those wishing to go to or leave the Fort. Such transfers are and can now be avoided by the certificate of the Commission which permits Missouri Pacific—as a part of its regular operations—to deliver passengers to the site of the Fort with their baggage without transfer.

■ We think plaintiff, in the light of the evidence, has failed to interpret the Commission's certificate to Missouri Pacific correctly. Plaintiff's interpretation contemplates that Missouri Pacific is authorized to operate up to and inside the Fort to the post exchange in competition with plaintiff's service. Testimony before the Commission shows that, in applying for a route to the post exchange, Missouri Pacific was not interested in local traffic but its primary desire was to deliver interstate passengers to the Fort for the convenience of such passengers so they would not be required to transfer to plaintiff's busses. From this evidence, the Commission concluded that it would not be granting authority to Missouri Pacific directly to compete with Plaintiff's local service. The authority, in fact, is limited to "off-route service in connection with [Missouri Pacific's] present operations". The Commission has not attempted to grant authority to service the post exchange or any other point inside the Fort. Permission is simply to the site of the Fort. The military authorities may deny Missouri Pacific the right to enter the Fort; or they may grant a permit to service inside the Fort and up to the post exchange.

■ The fundamental difference between the parties is this: Missouri Pacific claims—and the Commission has found—that public convenience and necessity must be considered in the light of the needs of the armed forces who travel to and from the Fort with origins or destinations beyond Kansas City; while plaintiff's serv-

ice, although efficient and adequate, is purely local. We think the evidence before the Commission shows that Missouri Pacific was not interested primarily in the local service. Its interest was to deliver to or take from the Fort interstate passengers who travel by its lines in order to avoid transfer.

After considering the evidence, the Commission found public convenience and necessity on a limited basis, viz., an additional off-route service to that already being performed by Missouri Pacific. Such decision will not be disturbed unless found to be unlawful or arbitrary, or unless not supported by evidence. The Act requires the Commission to find that a proposed service "is or will be required by the present or future public convenience and necessity". This is a matter within the informed judgment of the Commission in passing upon transportation questions. United States v. Carolina Freight Carriers Corp., 315 U.S. 475, 62 S.Ct. 722, 87 L.Ed. 971; Board of Trade of Kansas City v. United States, 314 U.S. 534, 62 S.Ct. 366, 86 L.Ed. 432; United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; Rochester Tel. Corp. v. United States, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147; Shields v. Utah Idaho Cent. R. Co., 305 U.S. 177, 59 S.Ct. 160, 83 L.Ed. 111. Moreover, the court may not substitute its judgment for that of the Commission in amending or attempting to limit the scope of the certificate issued. United States v. Carolina Freight Carriers Corp., supra; Chesapeake & O. R. Co. v. United States, D.C., 35 F.2d 769. There is no showing here that the Commission denied plaintiff a fair hearing, or committed an error of law. We reject the contention that there was a lack of evidence to support the Commission's order.

Lastly, plaintiff argues that the need to the induction center—even if not found to be "temporary" in nature—is not of the general public. Those members of the armed forces and draftees who utilize the services of both plaintiff and Missouri Pacific are transported by common carriers. When they travel via a common carrier, why are they not a part of the travelling public? Those on furlough going to and from the Fort must be considered as travelling as part of the public. Even if it be said that some of the armed forces travel on official business, they are still as much a part of the public as are any other travelers. The complaint will be dismissed. An order may be submitted.

Findings of fact and conclusions of law have been filed in conformity with Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.