BELL LINES, INC., a corporation, Roadway Express, Inc., a corporation, McLean Trucking Company, a corporation, Smith's Transfer Corporation of Staunton, Virginia, a corporation, and Huber & Huber Motor Express, Inc., Plaintiffs,

v.

UNITED STATES of America and Interstate Commerce Commission, Defendants, and Transamerican Freight Lines, Inc., Intervening Defendant.

Civ. A. No. 3759.

United States District Court S. D. West Virginia, Charleston Division.

Sept. 19, 1969.

**210**

Edward G. Villalon, McInnis, Wilson, Munson & Woods, Washington, D. C., Frank J. Kerwin, Jr., Eames, Petrillo, Wilcox & Nelson, Detroit, Mich., Francis W. McInerny, Macdonald & McInerny, Washington, D. C., William T. Brotherton, Jr., Amos & Brotherton, Charleston, W. Va., William O. Turney and Robert S. Burk, Turney & Turney, Washington, D. C., Frank Hall, Alan E. Serby, Atlanta, Ga., for plaintiffs.

W. Warren Upton, Asst. U. S. Atty., Charleston, W. Va., and Nahum Litt, Atty., I. C. C., Washington, D. C., for defendants.

William F. Wunschel, Steptoe & Johnson, Charleston, W. Va., and Alvis A. Layne, Washington, D. C., for intervening defendant.

Before BOREMAN, Circuit Judge, and FIELD and MAXWELL, District Judges.

## MEMORANDUM

PER CURIAM.

In this action the original complainants, five interstate public service motor carriers, seek to enjoin, set aside and annul an order of the Interstate Commerce Commission granting to Transamerican Freight Lines, Inc., also an interstate public service motor carrier, temporary authority to substantially expand its motor carrier services in eastern United States. The United States of America and the Interstate Commerce Commission are party defendants and Transamerican Freight Lines, Inc., is an intervening defendant. Fifteen other interstate public service motor carriers subsequently intervened as plaintiffs. All of these carriers have authority from the Commission to render interstate motor carrier services.

In June, 1967, Transamerican applied to the Commission for temporary authority, pursuant to provisions of 49 U. S.C.A. Section 310a, to transport general commodities over various routes between points established in its existing Commission authority and points in North Carolina, South Carolina and Georgia. Notice of the application was published in the Federal Register and more than forty motor carriers registered their written protests with the Commission. By order of the Commission's Temporary Authorities Board, dated July 19, 1967, Transamerican's temporary authority was denied on the finding that the application did not establish an immediate and urgent need for the expanded services. Transamerican petitioned for reconsideration on August 10, 1967, but was again denied by the September 27, 1967, order of the Commission's Division 1, acting as an Appellate Division.

Transamerican, on October 30, 1967, filed with the Commission a "Petition for Receipt of Additional Evidence and for Reconsideration of the Order of Di-

vision 1." By order of December 5, 1967, the Commission's Division 1, acting as an Appellate Division, vacated and set aside its September 27, 1967, order, found immediate and urgent need for the motor carrier services sought to be rendered by Transamerican and that there was no carrier service available capable of meeting such need, and granted Transamerican the requested temporary authority, detailed as to areas to be served, conditioned upon compliance with Commission requirements generally applicable to motor carriers. This order was served December 11, 1967. On December 14 plaintiffs filed a petition requesting a stay of the effective date of the order. On December 15 plaintiffs filed their complaint in this Court and on that date the Court, after hearing, issued a temporary restraining order for maintenance of the status quo until a hearing by a court of three judges on December 19 on plaintiffs' request for an injunction. Also on December 15 the Commission ordered a stay of the temporary authority grant until December 31, 1967. On December 19 the proceedings were continued until the further order of the Court. Many of the protesting motor carriers filed petitions with the Commission for reconsideration of the December 5 order and Transamerican filed a reply and a supplemental reply thereto. The Commission, on December 29, denied the relief sought in plaintiffs' petitions for reconsideration and extended the stay of the temporary authority grant until January 5, 1968. By letter of January 3 the Commission rejected a petition by plaintiffs seeking announcement that these proceedings involved a matter of general transportation importance. On January 5 the Court issued a temporary restraining order for maintenance of the status quo until the convening of the three-judge court on January 19. Also, on January 5 plaintiffs filed a supplemental complaint. The Joint Answer of the United States of America and of the Interstate Commerce Commission to plaintiffs' Complaint and Supplemental Complaint was filed January 15. On January 19, 1968, after a plenary hearing, this Court of three judges ordered that the temporary restraining order entered on January 5 remain in effect until the further order of the Court. This chronology of proceedings and developments will contribute to an understanding of the pertinent facts and principles of law that must be considered in resolving the controversy before the Court.

### Positions of Motor Carriers

Transamerican Freight Lines, Inc., with operating headquarters in Detroit, by application dated June 2, 1967, sought temporary authority from the Interstate Commerce Commission to transport general commodities, with some exceptions, between Transamerican's existing East-West motor carrier routes, stretching from Massachusetts, Connecticut and New York through Illinois, Indiana, Michigan, Ohio and Pennsylvania to Iowa, Nebraska and Oklahoma, and areas to the south over new routes extending into North Carolina, South Carolina and Georgia. The application was accompanied by detailed listing of points to be served together with maps showing proposed new carrier service routes. Later, on August 5, 1967, Transamerican filed its application with the Commission for permanent motor carrier authority, a matter to be noted but not here involved.

The temporary authority areas proposed to be served by Transamerican are in the territory presently served by one or more of the original plaintiffs in this action or by one or more of the later intervening plaintiffs. Bell Lines, Inc., with operating headquarters at Charleston, West Virginia; Roadway Express, Inc., with headquarters in Akron, Ohio; McLean Trucking Company, with headquarters in Winston Salem, North Carolina; Smith's Transfer Corporation of Staunton, Virginia; and Huber & Huber Motor Express, Inc., with headquarters in Louisville, Kentucky, the five original motor carrier plaintiffs in this action along with other motor carriers

in the areas proposed to be served by Transamerican's temporary authority, protested the Commission's grant of authority. Smith's Transfer Corporation is not noted as an original protestant in the proceedings. The ·Commission, acting by its sub-agencies, initially denied the grant but on reconsideration granted the temporary authority in its order of December 5, 1967, affirmed by its later order on December 29.

Transamerican, the applicant, supported its application to the Commission with numerous statements indicating the need for the carrier services sought and asserting otherwise in various expressions that existing carrier services were inadequate, were unavailable or were declining to serve. These statements in the form of letters accompanied and supplemented the application in accordance with Rules of the Commission relating to information required of the applying motor carrier. 49 C.F.R., Section 240.2 (now 49 C.F.R., Section 1131.2).

Plaintiffs ask the Court to declare the orders of the Commission granting the temporary authority to Transamerican to be null and void. In their brief, pages 47–48, they ask in the alternative that the Court remand the proceedings to the Commission with instructions to the Commission to reveal the authority and bases for its action and to make statements justifying and explaining its action in granting the temporary authority.

The intervening defendant, Transamerican, at page 2 of its memorandum, expresses its conviction that plaintiffs are attempting to have the "Court overrule a judgment that the statute explicitly authorizes the Commission to make." Further, Transamerican, at page 10 of its memorandum, affirms that the statements or letters supporting its application "recite instances of lack of suitable equipment, refusal to pick up shipments, excessive delays in transit, failures of multiple-line service, and tariff and traffic restrictions prohibiting use of any service."

## Jurisdiction of the Court

Plaintiffs filed their complaint in this Court and asked that a court of three judges be convened pursuant to provisions of 28 U.S.C.A. Section 2284. Jurisdiction is not seriously in issue. The several aspects thereof arise under provisions of 5 U.S.C.A. Sections 701–706, 28 U.S.C.A. Sections 1336, 1398, 2284, 2321–2325, and 49 U.S.C.A. Sections 305(g) and (h).

Section 2325 provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution, in whole or in part, of any order of the Interstate Commerce Commission shall not be granted unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

The language of 28 U.S.C.A. Section 2325, above quoted, does not purport to define the extent and scope of judicial review, but statutes *in pari materia* are to be construed together. The statute under which the temporary authority to carriers is granted, 49 U.S.C.A. Section 310a, provides that "the Commission may, in its discretion and without hearings or other proceedings, grant temporary authority for such service by a common carrier." The judicial review provisions of the Administrative Procedure Act, now 5 U.S.C.A. Sections 701–706, apply to judicial review of administrative action "except to the extent that * * * agency action is committed to agency discretion by law." Section 701(a). Section 706 defines scope of review including review of agency action which is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." A statute companion to 28 U.S.C.A. Section 2325, above referenced, is 28 U.S.C.A. Section 1336(a), which provides:

"Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part,

any order of the Interstate Commerce Commission."

Sections 1336 and 2325 are older statutes. The Motor Carrier Act of 1935 (49 U.S.C.A. Sections 301–327), with its 1938 Section 310a amendment vesting discretion in the Commission to grant the temporary authority here involved, and the Administrative Procedure Act, enacted in 1946, precluding judicial review where "agency action is committed to agency discretion by law," are more recent expressions of the Congress.

The temporary authority statute (49 U.S.C.A. Section 310a) has been subjected to judicial scrutiny on many occasions. Judicial review of orders of the Commission granting temporary authority thereunder is attested by many reported decisions. In the thirty years of the statute's existence the Congress has apparently not found need to clarify judicial review procedures applied thereto. Seldom has a court found that the Commission has transgressed in the exercise of its discretion. (See Acme Cartage Company v. United States, 290 F.Supp. 453 (W.D.Wash.1968)).

Plaintiffs and defendants, in their briefs, recognize that some form of judicial review is available and employable to review orders of the Commission granting temporary authority.

 The courts have developed workable principles which may be readily and practically applied. Agency action committed to agency discretion contemplates and implies a lawful exercise of discretion. Agency action which is arbitrary and capricious abuses discretion and constitutes an unlawful exercise of discretion. Our system of jurisprudence cannot tolerate such action. The judiciary must fairly assume that the legislative branch did not contemplate such excesses and abuses and, in the enactment of the pertinent statutes at various times, omitted language clearly defining the rights of judicial review here considered and the extent and scope thereof. The Court holds that it does

have jurisdiction to review the temporary authority orders of the Commission upon complaint fairly alleging that the Commission has acted arbitrarily and capriciously and in abuse of its discretion. Schenley Distillers Corp. v. United States, 50 F.Supp. 491 (D.C.Del.1943); Roadway Express, Inc. v. United States, 263 F.Supp. 154 (N.D.Ohio 1966); Merchants Delivery Co. v. United States, 265 F.Supp. 669 (W.D.Mo.1967); Merchants Delivery Co. v. United States, 253 F.Supp. 596 (W.D.Mo.1966); Hussey v. United States, 271 F.Supp. 650 (N.D. Cal.1967). Compare, Cappadora v. Celebrezze, 356 F.2d 1 (2 Cir. 1966).

The Court does not find in the Commission's action any extension and expansion of Commission power and authority, as viewed in plaintiffs' brief, page 23, to be "a far cry from that envisioned by Congress in 1938 when Section 210a(a) was enacted."

*Action of the Commission*

In Part V of their original Complaint, as amended by Part III of their Supplemental Complaint, Plaintiffs complain that the ,Commission's action was improper and not in accordance with the law, particularly referring to the orders of December 5 and December 29, 1967. The Commission's order of December 5 vacated and set aside its order of September 27 which had refused Transamerican the temporary authority requested. The December 5 order found that "there is an immediate and urgent need for the motor carrier service described in the appendix hereto, and that there is no carrier service available capable of meeting such need." The Commission thereupon ordered the grant of temporary authority to Transamerican conditioned upon Transamerican's compliance with customary requirements incident to motor carrier services. The Commission's order of December 29 declined to hear plaintiffs' motions or petitions for reconsideration of the December 5 order which was reaffirmed.

Plaintiffs state the basic issues in their brief, page 6, in this language:

"The ultimate questions of law require this Court to determine whether the Interstate Commerce Commission acted in excess of statutory authority and whether it abused its discretion in ultimately approving Transamerican's application for temporary authority."

Plaintiffs' allegations of the Commission's improprieties, as incorporated in their Supplemental Complaint, are quoted *in toto* as follows:

"The Commission's orders of December 5, and December 29, 1967, herein complained of are arbitrary, capricious, an abuse of discretion, without observance of procedure required by law, in excess of statutory authority, and otherwise not in accordance with the law for the following reasons:

"(a) They grant Transamerican temporary operating authority to and from points within a territory having existing motor common carrier services which are capable of, and are, meeting the transportation needs of the shipping and receiving public, which grant is contrary to the specific statutory requirements of 49 U.S.C., Section 310a(a).

"(b) They grant temporary operating authority which enables Transamerican to provide a multitude of services over wide territory for which there are no immediate or urgent needs, in complete and utter disregard of the specific provisions of 49 U.S.C., Section 310a(a).

"(c) They find an immediate and urgent need for the temporary services sought by arbitrarily and erroneously rejecting the definition of 'immediate and urgent need' promulgated by the Commission in Ex Parte MC–67, Motor Carrier Temporary Authorities, 49 C.F.R. Section 240.4(b) (2).

"(d) They find an immediate and urgent need for the temporary services sought by arbitrarily and erro-

neously disregarding the requirements of proof promulgated by the Commission in Ex Parte MC–67, Motor Carrier Temporary Authorities, 49 C.F.R. 240.2(c).

"(e) They find an immediate and urgent need for the temporary services sought by arbitrarily and erroneously disregarding the procedural requirements promulgated by the Commission in Ex Parte MC–67, Motor Carrier Temporary Authorities, 49 C.F.R. 240.6, and contained in the Commission's General and Special Rules of Practice.

"(f) They grant Transamerican temporary authority to provide services to and from points for which no evidence whatsoever was adduced.

"(g) They grant Transamerican temporary operating authority to transport numerous commodities to and from points for which no evidence whatsoever was adduced.

"(h) They fail to consider and dispose of material issues of fact and law properly presented by plaintiffs and others similarly situated, and particularly the issues raised by the various motions to reject or strike Transamerican's Petition for Receipt of Additional Evidence and Reconsideration of the Order of Division 1 on the grounds that under the Commission's Rules no such petition would lie.

"(i) They are inadequate, incomplete, inconsistent, and erroneous on their face, because they fail to comply with the requirements of Section 8 of the Administrative Procedure Act, 5 U.S.C. 1007, in that the orders do not contain 'a statement of * * * findings and conclusions, as well as the reasons or basis therefor, upon all the material issues of fact, law, or discretion presented on the record.'

"(j) They deprive plaintiffs of their property without due process of law as a result of the errors

hereinabove stated, in that Transamerican as a result of such errors is authorized by the order to provide transportation services and derive revenues therefrom of which revenues plaintiffs will be deprived."

Plaintiffs' allegations (a) and (b) state propositions contrary to the findings of the Commission in its December 5 order, affirmed in its December 29 order. Vested in the Commission by the statute (49 U.S.C.A. Section 310a) is the discretion to grant temporary authority for carrier service "for which there is an immediate and urgent need to a point or points within a territory having no carrier service capable of meeting such need." Plaintiffs assert that existing motor common carrier services are capable of meeting the transportation needs in the areas for which the temporary authority was granted to Transamerican. However, in keeping with Commission Rules relating to applications for temporary authority, many written statements of shippers and receivers were filed in support of Transamerican's application. With Transamerican's petition for reconsideration, additional statements were filed with the Commission. While it is not the duty of this Court in these proceedings to read all of these letters, a sufficient number has been examined to verify the fact that some of them affirmatively deny the existence of available carrier services capable of meeting the needs in areas covered by the grant of authority while other letters affirm the fact that certain motor carriers have refused to render service desired by shippers and receivers. The Government's brief, page 15, notes, with reference to the Commission's Rules on statements supporting applications for temporary authority that:

"These rules were designed to aid shippers and carriers in the filing of applications. They were not intended as rigid limits upon the Commission's discretion nor to revive 19th century common law pleading prac-

tices in Commission cases. That the eleven criteria are guides and not absolute requisites in every case is apparent from their own terms, which, under a literal or technical approach would preclude many, if not most, otherwise meritorious applications. The Commission has consistently applied this liberal interpretation of its rules as being complete compliance * * *."

The Commission compiled a 42-page chart of the letter statements accompanying Transamerican's application. The statements were checked with the eleven requirements of the Rules. The record discloses that each of the eleven requirements was checked a varying number of times. Some of the requirements may not have been applicable and pertinent or may not have been appropriate bases for responses by some of the writing shippers or receivers. The court of three judges in Roadway Express, Inc. v. United States, 263 F.Supp. 154, 159 (N.D.Ohio 1966), aptly observed:

"Moreover, a reading of these rules indicate that their purpose is to facilitate the Commission's handling of requests for temporary authority. The rules reflect no intention to reduce or relinquish its statutory discretionary power to issue certificates of temporary authority."

A presumption of validity accompanies orders of the Commission. A party attacking an order has the burden of showing its invalidity. Hughes v. United States, 278 F.Supp. 11 (E.D.Pa. 1967); 13 Am.Jur.2d, Carriers, Section 68 (1964). The Commission obviously granted the temporary authority here after considerable filtering. The application and supporting letters, considered along with all other record information including the several motor carrier protests, are presumed to have constituted a sufficient showing for the grant. In view of the discretion vested by the Congress in the Commission, the nature and application of the Commission's rules, and the record information before the Commission, the Court is unable to say that the grant of the temporary authori-

ty to Transamerican was arbitrary or capricious action or action in abuse of discretion.

Allegations (c), (d), (e), (f) and (g) are found to be without merit. The Court is satisfied that the Commission acted within the discretion vested in it by law. Plaintiffs, by recent communication with copies to counsel of record, cite the recently decided case of Acme Cartage Co. v. United States, supra, wherein the opinion of the court of three judges of the Western District of Washington holds that the Commission's action was arbitrary and capricious in that it ignored or waived compliance with the rules relating to contents of statements supporting the application for temporary authority. 49 C.F.R., Section 240.2(c), now 49 C.F.R., Section 1131.2(c), and more particularly requirements of Section 240.2(c) (8) and (9), now Section 1131.2(c) (8) and (9). These sub-sections call for information from the letter writers as to whether they made efforts to obtain carrier service from existing motor carriers in their respective areas and, if so, the names and addresses of the carriers failing or refusing to provide the services required, together with the reason or reasons given for such failure or refusal. The court examined the letter statements and found "none of them approaches compliance with, or provides the information required by" subsections (8) and (9 ) above referenced. Nor did the court find the information elsewhere in the record. On the other hand, the court noted that certified carriers in the area had protested the grant of temporary authority to the applicant and had asserted "ability and willingness to provide the needed carrier service in question."

The court considered the Commission's failure to require compliance with the rules in the Acme Cartage Co. case as constituting capricious and arbitrary action and accordingly held the Commission's temporary authority orders to be null and void.

In the case under consideration here, plaintiffs, in their brief, pages 31–36, discuss the rules relating to the content of the supporting letters, assert that Transamerican's application was deficient, and complain that the Commission has not yet set forth or explained its reasons for permitting departure from the requirements of its rules. The case presently before the Court does not fit into the context of the Acme Cartage Co. case, as above reviewed. In this case some of the many letters respond to every requirement of the rules, as shown by the Commission's 42-page chart above mentioned. In Roadway Express, Inc. v. United States, 263 F.Supp. 154 (N.D. Ohio 1966), the question was raised as to the quality of the supporting letters when they become greatly stereotyped, a tendency almost certain to develop when responding methodically to the eleven requirements of the rules. In the Roadway Express case the court concluded that "the repetition of this apparent stock statement goes to the weight of each statement not to its legal sufficiency." Each shipper's and each receiver's need and situation calling for motor carrier services will differ in some degree. This is well illustrated by Estes Express Lines v. United States of America, 292 F.Supp. 842 (E.D.Va.1968). The variations in and the contents of the many letters filed in support of Transamerican's application add credit and weight to the record bases on which the Commission's grant of temporary authority rests. Letters supporting applicant's Petition for Reconsideration of the Order of the Temporary Authorities Board, as filed with the Commission on August 10, 1967, indicated some motor carriers had moved to correct and cure some of the alleged defects in carrier service and had thereby precipitated some added problems in transportation. While the Court does not purport to probe the thought process of Commission personnel, deliberations can be affected and changes properly brought about when the many items and factors

of a proliferating record are analyzed and weighed in totality.

Allegation (h) presents the proposition that the Commission acted arbitrarily and capriciously and not in accordance with law by failing and refusing to reject or strike Transamerican's Petition for Receipt of Additional Evidence and Reconsideration of the Order of Division 1 on the grounds that under the Commission's Rules no such petition would lie. Plaintiffs' brief, pages 26–41, treats these matters under the heading of "Procedural Errors." Reference is there made to the Commission's Rules of Procedure, particularly 49 C.F.R., Section 1.101(f) and (g), relating to reconsideration of inner-agency action prior to issuance of the Commission's order. The Court, on review of the procedures here employed and the Rules of the Commission relating thereto, does not find merit in plaintiffs' position. Plaintiffs' helpful appendix to their brief, at page 55, quotes 49 C.F.R., Section 1.2, and at page 75, quotes 49 C.F.R., Section 240.6 embodying Rules of the Commission persuasively pertinent here. Indeed this inner-agency consideration and reconsideration constitute essential ingredients of the administrative process and provide the means of testing and retesting and weighing and reweighing the various factors which ultimately contribute to the shaping of the agency's final institutional decision. See United States v. Rock Island Motor Transit Co., 340 U.S. 419, 448, 71 S.Ct. 382, 95 L.Ed. 391 (1951); Davis, Administrative Law, Sections 11.01 through 11.21. We are mindful of plaintiffs' arguments, brief, pages 26–31, on this point, but do not find them persuasive. For example, we do not find Upjohn Co. v. Pennsylvania Railroad Co., 381 F.2d 4 (6th Cir.1967), cited as a recent case, to be pertinent.

■ Allegation (i) asserts that the Commission action was erroneous because of failure to comply with requirements of Section 8 of the Administrative Procedure Act, 5 U.S.C.A. Section 1007 (now 5 U.S.C.A. Section 557), that orders contain a statement of findings and conclusions, together with the reason or basis therefor. Obviously these requirements of the Administrative Procedure Act do not apply to the Commission's temporary authority orders here considered. In temporary authority cases the Commission acts in its discretion and largely without hearings or other proceedings. In its December 5 order, affirmed in its December 29 order, the Commission found immediate and urgent need for the temporary motor carrier service for which the authority was granted and that there was no carrier service available capable of meeting such need. We do not find this action of the Commission to be "inadequate, incomplete, inconsistent and erroneous," as asserted by plaintiffs. See Roadway Express, Inc. v. United States, 263 F.Supp. 154, 157 (N.D.Ohio 1966).

■ Allegation (j) asserts that the grant of the temporary authority to Transamerican deprives plaintiffs of their property without due process of law in that Transamerican will derive revenues from the transportation services rendered under the temporary authority, thus depriving plaintiffs of revenues to be derived from such services. In 1938 the Congress determined that the Motor Carrier Act of 1935 should be amended to provide for a grant of temporary authority to motor carriers in areas wherein there was immediate and urgent need for their services and no carrier service was available capable of meeting the need. The statute provides that the grant of the temporary authority "shall create no presumption that corresponding permanent authority will be granted thereafter." (49 U.S.C.A. Section 310a). The Congress vested discretion in the Commission to ascertain the need, to ascertain whether there were available carrier services in the area capable of meeting the need, and, if not so available, to grant temporary authority to available carriers capable of supplying the need for a limited period of time. This was a policy decision of the policy making branch of our government. Plaintiffs' position in this allega-

tion, that the temporary authority orders of the Commission deprived them of their property without due process of law, echoes arguments advanced in Dixie Highway Express, Inc. v. United States, 268 F.Supp. 239 (S.D.Miss.1967). There the court of three judges considered it to be the "invariable rule of the Commission" not to issue a certificate of convenience and necessity in the area of another carrier until the other carrier has been given an opportunity to improve and correct its services. The court considered the policy and practice to "constitute a rule of property which may not be violated by the Commission without doing violence to the due process rights of these protestants." But the Supreme Court, in a *per curiam* opinion, reversed, negating any such property right of protestants. United States v. Dixie Highway Express, Inc., 389 U.S. 409, 88 S.Ct. 539, 19 L.Ed.2d 639 (1967). Earlier in Schaffer Transportation Co. v. United States, 355 U.S. 83, 91, 78 S.Ct. 173, 178, 2 L.Ed.2d 117 (1957), the Court quoted with approval a Commission statement that

"No carrier is entitled to protection from competition in the continuance of a service that fails to meet a public need, nor, by the same token, should the public be deprived of a new and improved service because it may divert some traffic from other carriers."

It is to be noted that the *Dixie Highway Express* case involved Commission action on a motor carrier certificate of convenience and necessity, not an order granting temporary authority. *A fortiori* the Supreme Court's decision in the *Dixie Highway Express* case will apply in cases wherein only a grant of temporary authority to a motor carrier is involved. Plaintiffs' position in allegation (j) of their complaint is not tenable.

*Summary of Findings and Conclusions*

To recapitulate, the Court restates its disposition of the questions presented, as follows:

1. The Court has jurisdiction to review the orders of the Interstate Commerce Commission granting temporary authority to motor carriers under 49 U.S.C.A. Section 310a.

2. The scope of judicial review is limited, under the state of the record here, to a determination of whether the Commission's orders are arbitrary or capricious, in abuse of discretion or for some other reasons contrary to law.

3. The "substantial evidence" rule, applicable in the judicial review of many Commission orders relating to grants of certificates of convenience and necessity, is not applicable in grants of temporary authority to motor carriers under 49 U.S.C.A. Section 310a.

4. The presumption that Commission orders are correct and proper stands unless rebutted by the parties attacking the validity of the orders.

5. The Commission's orders granting temporary authority to Transamerican are supported by the evidence in the record.

6. Inner-agency findings and rulings may on reconsideration be revised, modified or reversed by the Commission.

7. Motor carriers holding certificates of convenience and necessity for transportation services in the area traversed by the temporary authority routes do not have property rights protected by due process guaranties against temporary authority competition since the Commission finds need for temporary authority services and the absence of available capable carriers to supply the need.

8. The eleven rules of the Commission relating to the contents of letter statements supporting applications for temporary authority are not legal absolutes but administrative guidelines.

9. The Commission's decision on a grant of temporary authority is not determinative of an application for permanent authority for transportation services.

10. Contentions that the Commission here is extending and expanding its pow-

ers and authority under 49 U.S.C.A. Section 310a, beyond the limits intended and contemplated by the Congress when the statute was enacted in 1938, under the state of the record here, are not well founded. Congress, as the policy-making branch of the government, possesses the tools to effectively guard against any threat of administrative subversion of its legislative intent, as is here suggested, and the law, as required by its findings. The judiciary, on the other hand, provides the forum to restrain and prohibit arbitrary extensions of conduct beyond the law as well as to curb and correct abuses in the exercise of powers and authority if any appear.

The proceedings in this case illustrate the vibrant industrial, commercial and economic factors involved in the nation's highway transportation complex. The well-being of the nation's population is now greatly dependent on the motor carrier industry. It is significant that when Transamerican applied to the Commission for temporary motor carrier authority nearly 400 shippers and receivers supplied letter statements in support thereof and that more than forty motor carriers serving eastern segments of the country protested. The Interstate Commerce Commission, one of the oldest administrative agencies in the government, acting on statutory grants of authority by the legislative branch, processed the application through administrative procedures and granted the temporary authority. Five carriers as plaintiffs brought the case to this Court for judicial review of the administrative action and other protestants later intervened. The allegations of the protesting carriers, couched in strong, formidable and persuasive language, suggested an apparent course of government action threatening to impair established rights and properties of the motor carrier industry. The Court responded with a restraining order. The record has now been carefully reviewed and the Court finds the Commission has acted within the discretion vested in it by the Congress.

The Court's findings and conclusions in this case are in accord with the decision of a court of three judges convened in the Northern District of Georgia in Superior Trucking Company, Inc., et al. v. United States of America and Interstate Commerce Commission, 302 F. Supp. 257 (1969).

Accordingly, by an appropriate order, the temporary restraining order issued herein on January 19, 1968, will be vacated and set aside, the complaint as supplemented and amended will be dismissed, and these proceedings will be remanded to the Interstate Commerce Commission for appropriate administrative action.