J–T TRANSPORT COMPANY, Inc.,
Plaintiff,

v.

UNITED STATES of America and Interstate Commerce Commission,
Defendants.

No. 12962.

United States District Court
W. D. Missouri, W. D.

Feb. 21, 1961.

———————◇———————

Glenn M. Elliott, Wrape & Hernley, Memphis, Tenn., John H. Kreamer, Gage, Hodges, Moore, Park & Kreamer, Kansas City, Mo., for plaintiff.

Atty. Gen. of the United States of America, by Joel E. Hoffman, Washington, D. C., Edward L. Scheufler, U. S. Atty., Western Dist. of Missouri, by

Horace Warren Kimbrell, Asst. U. S. Atty., Kansas City, Mo., H. Neil Garson, Associate Gen. Counsel Interstate Commerce Commission, Washington, D. C., for defendants.

Before MATTHES, Circuit Judge, and RIDGE and SMITH, District Judges.

RIDGE, District Judge.

This is an action to enjoin the enforcement of, and to set aside, an order of the Interstate Commerce Commission, (Division No. 1, acting as an Appellate Division) entered on August 4, 1960, in Docket No. MC–11185 (119 TA) J-T Transport Company, Inc. (hereafter referred to as J-T) revoking temporary authority previously granted plaintiff by the I.C.C. Temporary Authorities Board (hereafter referred to as T.A.B.). This Court has jurisdiction under 28 U.S.C.A. §§ 1336, 1398, 2284 and 2321–2325, inclusive.

The undisputed facts are as follows: On May 3, 1960, J-T, as a contract motor carrier, in order to provide Lockheed Aircraft Corporation's (hereafter referred to as Lockheed) immediate and urgent need for motor carrier transportation, filed an application with the I.C.C. for temporary authority to transport aircraft assemblies, (except aircraft engines) over irregular routes, generally stated, from specified points of entry on the United States-Canadian International Boundary, to Burbank and Palmdale, California, the shipments originating at Montreal, Canada. U.S.A.C. Transport, Inc., a common carrier, (hereafter called U.S.A.C.) filed a protest to that application on May 12, 1960. On June 7, 1960, T.A.B., without formal hearing, entered an order granting J-T temporary authority on the premise that there was no carrier service available capable of meeting Lockheed's need.[1] U.S.A.C., on June 27,

1. Omitting caption, the order of the I.C.C. Temporary Authorities Board is as follows: ·

"Application of the above-named applicant, filed under section 210a(a) of the Interstate Commerce Act, as amended, for temporary authority to operate as a motor carrier in interstate or foreign commerce being under consideration, and

"*It appearing*, That there is an immediate and urgent need for the motor carrier service described in the appendix hereto and that there is no carrier service available capable of meeting such need:

"*It is ordered*, That applicant be and is hereby granted temporary authority, conditioned upon full compliance with all applicable statutory and Commission requirements concerning tariff publications and evidence of security for the protection of the public, to engage in the business of transportation by motor vehicle, in interstate or foreign commerce, to the extent and in the manner set forth in the appendix hereto, subject to the further conditions that unless otherwise provided in the appendix *(1) the service herein authorized shall be limited to the handling of the described traffic from and to the specific points or territories set forth in the appendix, and (2) no operating right separately described in the appendix may be combined with any other operating right therein described, or with any other temporary* or *permanent authority now held by, or hereafter issued to, applicant or any other carrier for the purpose of performing service from or to points not within the specific authority herein granted.*

"*It is further ordered*, That the service provided for in this order shall not be commenced until all requirements have been met and applicant has received notice from the Commission that such service may be instituted.

"*It is further ordered*, That if applicant fails to comply with all applicable statutory and Commission requirements, rules, and regulations within 30 days from the date hereof, or such additional time as the Commission may specifically grant, this order shall be of no further force and effect and the said application shall be deemed to be denied for want of prosecution and applicant so notified.

"*And it is further ordered*, That except as herein granted the said application be, and it is hereby, denied.

"By the Commission, Temporary Authorities Board."

An Appendix to said order reads as follows:

"Notice To Parties: Special Rules of Practice Governing Procedure of the Temporary Authorities Board provide that petitions for reconsideration of the action of the said Board may be filed within 20 days following service of no-

1960, filed a petition for reconsideration of that T.A.B. order. J-T filed a reply thereto on July 25, 1960. On August 4, 1960, Division 1, acting as an Appellate Division, entered an order granting U.S. A.C.'s petition for reconsideration and reversed the action of T.A.B. by revoking the temporary authority previously granted, "for the reason that U.S.A.C. Transport, Inc., is authorized to, and can, perform the service as a common carrier." Such revocation was made effective as of August 25, 1960. On August 17, 1960, J-T filed a petition for: (1) stay of the effective date of the Division 1 order; (2) for reconsideration by Division 1 of that order; and (3) for reconsideration thereof by the full Commission. U.S.A.C. filed a reply to J-T's petition for stay and rehearing, etc., on August 26, 1960. However, prior to the filing of such reply, Division 1 had entered an order on August 24, 1960, denying the stay and denying the petition for reconsideration and review, etc., "for the reason that no showing has been made which would warrant a conclusion different from that reflected by the said order of August 4, 1960 * * *." The last-mentioned Division 1 order restated the effective date of revocation of J-T's temporary authority to be August 25, 1960.

Four days later, J-T Transport Company, Inc., commenced the instant action and applied to the Judge to whom this action was first assigned, for a temporary restraining order. On that date, August 29, 1960, a telegram was dispatched to the Commission, requesting the *status quo* be maintained pending convening of a Three-Judge Court to hear the motion for temporary restraining order and interlocutory injunction, concurrently. Upon refusal of the Commission to accede to that request, a temporary restraining order was issued, on August 31, 1960, pursuant to Section 2284(3), Title 28, U.S.C.A.

September 5, 1960, by stipulation of the parties, the effective date of the restraining order supra was continued to October 1, 1960, "in order that the United States of America and the Interstate Commerce Commission may ascertain and determine the attitude which the defendants wish to adopt with respect to the allegations in the complaint, * * * and in order that there shall be no disruption of transportation service being performed by plaintiff under the temporary authority in the interim." (Stip. filed Sept. 15, 1960.) By subsequent stipulation of the parties filed and orders entered, the restraining order originally issued was "continued in full force and effect until the Three-Judge Court herein assembled shall have handed down its opinion on the application of plaintiff for an interlocutory injunction."

Antecedent to the filing of its application for temporary authority above mentioned, J-T, on October 12, 1959, filed an application for permanent authority with the I.C.C. pursuant to Section 209(b) of the Interstate Commerce Act, (49 U.S. C.A. § 309(b)) to operate as a contract carrier and perform the same transportation as described in relation to the temporary authority application above mentioned. U.S.A.C. filed protest to that application, also. A hearing was held on that application before an I.C.C. Examiner on January 4, 1960. After such hearing the I.C.C. Examiner recommended that permanent authority, as prayed, be granted to J-T, notwithstanding U.S.A. C.'s protest. In due course that matter came on for consideration by Division 1. While several carriers initially expressed interest in J-T's application for such permanent authority, only one motor carrier, U.S.A.C., appeared in opposition.

U.S.A.C. is a common carrier by motor vehicle, possessing authority, so far as here pertinent and generally stated, to transport uncrated aircraft parts and equipment initiating at points east of

tice of such action. The Commission requires the original and four copies of each such petition filed and also a statement

certifying that one copy thereof has been served on each party of record in the proceeding."

the Mississippi River, to points in that part of the United States west of that river. In the protests filed to J-T's application for temporary authority, U.S. A.C. expressed a readiness, willingness, and an ability to make proper arrangements and provide common carrier transportation in respect to the service required by Lockheed.[2]

On June 24, 1960, J-T's application for permanent authority was denied by report and order of the Commission, Division 1, in J-T Transport Company, Inc., Extension Burbank and Palmdale, California, Docket No. MC–11185 (Sub-No. 114). J-T filed a petition for reconsideration thereof on September 5, 1960, and U.S.A.C. replied on October 3, 1960. The petition for reconsideration is currently under consideration by the Commission.

Since T.A.B. granted J-T temporary authority as above stated, J-T has had an arrangement with a Canadian carrier whereby equipment of J-T is devoted to the contract carrier service it is performing for Lockheed, and the same is used in transportation service from Montreal to the United States-Canadian International Boundary by a Canadian carrier, where J-T then takes over the shipment and transports the same to Burbank and Palmdale, California. According to the Division 1 order of June 24, 1960, above mentioned, it appears that there is no impediment to a common carrier devoting specialized equipment to a particular shipper's need, if all other shippers are afforded such common carrier service.

Prior to 1959, Lockheed had sub-contract arrangements with manufacturers at Grand Prairie, Texas and Wichita, Kansas, for production of certain sub-assembly airplane parts which it caused to be transported, by way of contract motor carriers, from the plants of those sub-contractors to its own plants in Burbank and Palmdale, California. During that period, J-T, under grant of contract carrier authority from the I.C.C., performed and effected such transportation according to Lockheed's needs. In the latter part of 1959, Lockheed's contract with the above-mentioned sub-contractors expired. Lockheed then changed its source of supply for sub-assemblies, by entering into a sub-contract with Canadair, Ltd. to produce the same at Montreal, Canada. The transportation service here involved, simply stated, relates to a change of Lockheed's source of supply from Grand Prairie, Texas and Wichita, Kansas, to Montreal, Canada; and a concomitant application by J-T for extension of authority to provide that transportation as it had done in the past.

■ As above stated, Division 1 denied J-T's application for permanent authority on June 24, 1960.[3] It was Au-

2. The I.C.C. Examiner, in his report filed with the Commission, made the following finding of fact regarding U.S.A.C.'s authority and ability to perform the transportation in question:

"Protestant U.S.A.C. Transports, Inc., operates, over irregular routes, for the transportation of aircraft parts, crated and uncrated, restricted to parts requiring special equipment or handling by reason of size, weight, or fragile character (1) between all points and places in the United States east of the Mississippi River and (2) between all points and places in the United States east of the Mississippi River, on the one hand, and on the other, all points and places in the United States west of the Mississippi River. It operates 130 tractors and 247 trailers and maintains terminals at various points in the United States. It has handled aircraft traffic between various points not here involved. It maintains that it would be willing to provide service between Burbank and Palmdale, on the one hand, and Rouses Point, N.Y., (on the International Boundary) on the other, and to enter into some kind of an arrangement under which a Canadian motor carrier would provide service between the International Border and Montreal."

3. In its order denying J–T permanent authority the Division 1 Commission said, in part:

"Exceptions were filed by U.S.A.C. Transport, Inc., hereinafter called U.S. A.C., to the order recommended by the examiner, and applicant replied. Our conclusions differ from those recommended."

*     *     *     *     *

gust 4, 1960, that Division 1 set aside and revoked T.A.B.'s grant of temporary authority to J-T. Certainly, Division 1 had before it, or in its expertise had knowledge of, the findings and conclusions it had made in the prior order, when it revoked T.A.B.'s initial grant of temporary authority to J-T.[4]

It is the position of J-T in this case that in promulgating the orders of August 4 and 24, 1960, revoking its temporary authority, Division 1 of the I.C.C. (Commissioners Murphy, Goff and Herring presiding) acted arbitrarily, capriciously and without authority, and, in so doing, has deliberately flaunted the judgment of this Court (Circuit Judges Johnsen and Matthes and District Judge Smith) handed down on August 9, 1960, in *J-T Transport Company, Inc. v. United States et al.*, 185 F.Supp. 838, as well as the judgment of a Three-Judge Court for the Western District of Arkansas, Fort Smith Division, (Circuit Judge Matthes and District Judges Miller and Young) handed down on October 19, 1960, in *Reddish et al. v. United States et al.*, D.C., 188 F.Supp. 160. More specifically stated, it is J-T's contention: (1) that the orders of Division 1, denying its application for temporary authority, are predicated solely and alone on the *adequacy, willingness* and *ability* test, the subject of adjudication by the Three-Judge Courts in the above-cited opinions; and, as a consequence, Division 1 denied its

---

"The evidence, the examiner's recommendations, the exceptions, and the reply thereto have been considered. We find the statement of facts in the examiner's report to be correct in all material respects; we *adopt* such statement, as hereinafter supplemented, as our own. As no exceptions are taken to the recommended partial denial of the application, we adopt the examiner's findings to this extent as our own."

\* \* \* \* \*

" \* \* \* In determining whether *issuance* of a permit will be consistent with the public interest and the national transportation policy, however, section 209(b) of the act requires us to consider the effect which granting the permit would have upon the services of opposing carriers and upon the applicant and its supporting shippers, and the changing character of shipper's requirements. Considering this application in the light of these requirements we believe that the grant of the authority will not be consistent with the public interest.

"The nature of the proposed service must be considered with a view to determining whether it might be performed by either a common or contract carrier, or *by one such class of carriers only.* Here this would include modification of equipment to accommodate the particular aircraft components involved, as well as making such modified equipment continuously available to the shipper requiring it. A common carrier can fulfill its obligations to the general public by making such a service available to all shippers. With respect to the service of U.S.A.C., it is clear that it holds the necessary authority to perform the op-

erations needed. It indicates its willingness to modify its present equipment to met the exacting specifications of Lockheed. Lockheed's desire for applicant's service is based apparently on the propositions that applicant's rates will be lower and that U.S.A.C.'s delay in submitting its proposed rates indicates that carrier's distinterest in providing the needed service. We do not think that it can be said that U.S.A.C.'s six months' delay in submitting rates for the proposed service strongly indicates its lack of interest in the considered traffic considering that Lockheed did not require or set a deadline for the tendering of these rates. A mere desire for lower rates is not sufficient to warrant a grant of additional authority in the absence of the failure of applicant to show the existing carriers are not able to provide the needed service. Inasmuch as there is existing motor service available to transport shipper's products and as U.S. A.C. is willing to modify its equipment to meet the shipper's specifications, a denial of the application will have no adverse effect *upon the supporting shippers;* nor does it appear that any recent or impending further change in the character of the shipper's needs requires a grant of authority. There is no evidence here as to the extent that a denial of the application would affect applicant's financial condition, or that such a denial would have a materially adverse effect upon it. We conclude therefore that the application should be denied."

4. The I.C.C. may take official notice of data in its own files. *Paramount Cap Mfg. Co. v. N. L. R. B.*, 8 Cir., 260 F. 2d 109, and cases therein cited.

application for temporary authority by consideration of criteria that should not be taken into account in the grant of contract motor carrier service; (2) that the Commission having found that plaintiff is a contract carrier and proposes to perform a highly specialized transportation service designed to meet the distinct need of Lockheed, a fundamental question here for determination is whether J-T may have the temporary authority, initially granted to it, revoked upon the sole ground that one common carrier which has not participated in handling the involved traffic * * * can perform the required transportation service as a common carrier; and (3) that by the mandate of Section 9(b) of the Administrative Procedure Act (5 U.S.C.A. § 1008 (b)), Division 1 had no power or authority to revoke the temporary authority granted to T.A.B. while J-T's application for permanent authority was pending before the Commission. As to each such matter, J-T claims Division 1 acted arbitrarily, capriciously and in excess of its statutory authority, and asserts a right to judicial review of that agency action under Section 10(a) of the Administrative Procedure Act (5 U.S.C.A. § 1009 (a)).

The United States and the I.C.C. counter plaintiff's position by asserting: (1) this Court is without jurisdiction to review the order of the Commission, Division 1, acting as an Appellate Division, because such order is, and was, the exercise of administrative discretion granted under Section 210a(a) of the I.C.C. Act, (49 U.S.C.A. § 310a(a); and authorized by I.C.C. Special Rules of Practice; and Section 10 of the Administrative Procedure Act supra, delimits our jurisdiction to review that matter; (2) that Division 1 did not act capriciously, in excess of its authority, or in abuse of its discretion in entry of said order as claimed by plaintiff; and (3) this Court is without power to grant relief as prayed by J-T, because the relief sought is in the nature of mandamus; and mandamus directed to the Commission may only be

granted, where appropriate, by the District Court for the District of Columbia.

■ In light of the facts above stated, J-T asserts:

"The fundamental question then presented is whether the Commission, having found that plaintiff is a contract carrier, and that it proposes to perform a highly specialized transportation service designed to meet the distinct need of its shipper may have its temporary authority, lawfully granted, revoked upon the sole ground that one common carrier, which has not participated in handling the involved traffic * * * 'can perform the service as a common carrier.'" (Plf's Br., p. 13.)

In the posture of that statement J-T seemingly finds a sequel in the events leading up to the concoction by Division 1, of the orders of August 4 and 24, 1960, supra, the subject matter of the instant action, to the I.C.C. orders, judicial review of which was allowed, considered and adjudicated before the Three-Judge Courts, by opinions rendered in the litigation hereinabove cited. That no such sequence can be logically attached to an order of the I.C.C. relating to an application for permanent contract motor carrier service, made pursuant to Section 209(b) of the I.C.C. Act, and an application for temporary authority to provide such service, allowable in the discretion of the Commission under Section 210a(a) of the Act, now appears obvious. To bring that matter to the surface, one only need consider the criteria which the Three-Judge Courts considered and determined that the I.C.C. could statutorily take into consideration, as a legal basis for orders entered in respect to applications for permanent contract carrier authority; and the statutory discretionary authority which is vested in the Commission under Section 210a(a) supra. So transparent is that situation, we deem it unnecessary to sound out J-T's contention that by the orders of Division 1, entered on August 4 and 24, 1960, the "Commission is flaunting the opinion

of this Court," reported in J-T Transport Company, Inc. v. United States et al., supra. It is sufficient for us to say that we find no source of precedent, ruling any issue presented by pleading or brief in the instant action, from what was said and adjudicated by the Three-Judge Courts in the opinions hereinabove cited.

■ The issues for determination in the case at bar wholly revolve around Section 210a(a) of the I.C.C. Act, supra. Whether judicial review exists, of the orders of Division 1 here complained of, depends on: (1) the legal basis for the action taken by Division 1, acting as an Appellate Division, in its promulgation of such orders; and (2) a factual premise therefor. As said in Bowen Transports v. United States et al., D.C., 116 F.Supp. 115, 120:

> "In the instant case we do not have the necessity that the final conclusion of the Commission be supported by substantial evidence as required to support a finding in an order of the Commission granting or denying a permanent certificate of convenience, or where a formal hearing is held. Section 210a(a) of the Transportation Act, 49 U.S.C.A. § 310a(a), provides that temporary authority of service may be granted in the discretion of the Commission without hearings or other proceedings."

That being so, we need only look to the legal authority for Division 1 to act as it did in the circumstances presented to it, when it undertook to revoke the temporary authority granted to J-T by the Commission T.A.B.

By Section 17(2) of the Transportation Act (49 U.S.C.A. § 17(2)), the I.C.C. is authorized to refer "to a board to be com-posed of three or more eligible employees of the Commission * * * work, business, or functions" under any provision of law except certain matters not here pertinent for consideration. Section 17 (6) provides for rehearing, reargument, or reconsideration of decisions, orders or requirements of any such board "by the Commission or referred to an appropriate appellate division for consideration and action." Section 17(7) grants to "the Commission or appellate division" power to "reverse, change, or modify" any decision of such board, "after rehearing, reargument, or reconsideration." Part 1.225 of the Commission's Special Rules of Practice, (49 C.F.R. 1.225) is compatible with the statutory grant of authority and procedure above outlined.[5]

Therefore, under facts above stated, it is readily apparent that Division 1, acting as an Appellate Division, in promulgation of its orders of August 4 and 24, 1960, of which J-T complains, did so within the ambit of vested statutory authority and I.C.C. Special Rules of Practice.

Plaintiff's contention that the Division 1 orders, supra, were a revocation of temporary authority previously granted for 180 days, cannot be sustained. As said in Bowen Transports v. United States et al., supra:

> "However, this court must look through the terminology to ascertain what action was taken. Shannahan v. United States, D.C., 20 F.Supp. 1002, affirmed 303 U.S. 596, 58 S.Ct. 732, 82 L.Ed. 1039. The temporary certificate was not finally issued by the single Commissioner but was subject to being affirmed or reversed upon reconsideration. The good cause for revocation, as provided by Section 210a(a) is required to be

---

5. Sections 1.225(a) & (b), I.C.C. Special Rules of Practice, provide:

"(a) The proceedings of the Temporary Authorities Board and the Transfer Board shall be informal. No transcription of such proceedings will be made. Subpenas will not be issued and, except when applications or petitions are required to be attested, oaths will not be administered.

"(b) A petition for reconsideration of an order of the Temporary Authorities Board or the Transfer Board may be filed by any interested person. Such petition and the reply thereto, will be governed by the Commission's general rules of practice, except as otherwise provided in paragraphs (c), (d) and (e) of this section."

proven only where the temporary authority for service has been granted by the final order of the Commission." (loc.cit. 121)

When U.S.A.C., within 20 days following service of the T.A.B. order, filed petition for reconsideration, the same was timely filed (49 C.F.R. 1.225(d)). Thereafter, Division 1, acting as an Appellate Division, was vested with jurisdiction over J-T's application for temporary authority. The temporary certificate issued by T.A.B. was not final issuance of temporary authority to J-T, but was subject to being affirmed or reversed upon reconsideration by Division 1, acting as an Appellate Division.

■■ The August 4, 1960, order of Division 1, acting as an Appellate Division, reveals it was entered on the petition of U.S.A.C. for reconsideration. On such reconsideration, Division 1 had authority to revoke the previous order made by T.A.B. The reason for such revocation is stated in that order, thus: "U.S.A.C. Transport, Inc. is authorized to, and can perform the service as a common carrier." Regardless of the finding made by T.A.B. to the effect "that there is no carrier service available capable of meeting (Lockheed's) need," Division 1 was not bound thereby. Division 1, acting as an Appellate Division, was vested with the same character of discretionary power by which T.A.B. presumed to act, under Section 310a(a). In its expertise, Division 1 could, in review of the T.A.B. order, form a conclusion independent of that made by T.A.B., and revoke the T.A.B. order previously entered. Neither by statute nor I.C.C. Special Rules of Practice was Division 1 required to accept the conclusion reached by T.A.B., act in any given manner, or forbidden to act under any specified conditions, in its reconsideration of J-T's application

for temporary authority. Discretion was vested in it to act in the light of the facts as it ascertained, either from the record previously made regarding that application, or those of which, in its expertise, it could take official notice. Under such circumstances, this Court cannot restrain the Commission from so acting, or compel it to take action in any specific manner. So long as Division 1 did not exceed its jurisdiction, its reason for "revoking", i. e. denial of J-T's application for temporary authority, is not subject to judicial review for an error either of fact or law which induced it to reach that conclusion. M. P. & St. L. Express, Inc. v. United States, D.C.W.D.Ky.1958, 165 F.Supp. 677; Luckenbach Steamship Co. v. United States et al., D.C., 179 F.Supp. 605; Bowen Transports v. United States et. al., D.C., 116 F.Supp. 115; Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 78 S.Ct. 752, 2 L.Ed.2d 788.

We do not reach the "right of review" as claimed by J-T, under Section 10(a) of the Administrative Procedure Act; nor is it necessary that we discuss the mandate of Section 9(b) of that Act, in the context as presented by the parties. As to the former, suffice to say we are convinced that what is here involved is discretionary agency action committed by law to the I.C.C. and that the first paragraph of Section 10 supra precludes judicial review as here prayed. As to the latter proposition, what is said above as to non-finality of the temporary authority granted to J-T by T.A.B. is sufficient, without further consideration of that matter.

The temporary restraining order entered herein was improvidently granted. It should be vacated and set aside. Plaintiff's application for temporary injunction will be denied and plaintiff's complaint dismissed.