SUPERIOR TRUCKING COMPANY, Inc., a Georgia corporation, Atlanta, Georgia, Home Transportation Company, Inc., a Georgia corporation, Atlanta, Georgia, Moss Trucking Company, Inc., Charlotte, North Carolina

v.

UNITED STATES of America; Interstate Commerce Commission

Equipment Transport, Inc. (Intervenor).

No. 12407.

United States District Court
N. D. Georgia,
Atlanta Division.

June 3, 1969.

Guy H. Postell, Frank D. Hall, Atlanta, Ga., Robert E. Born, Marietta, Ga., for plaintiff.

Slaton Clemmons, Asst. U. S. Atty., Atlanta, Ga., Richard W. McLaren, Asst. Atty. Gen., John H. D. Wigger, Atty., Dept. of Justice, Washington, D. C., for the United States.

Robert W. Ginnane, Gen. Counsel, Steven Kazan and Philip W. Getts, ICC, Washington, D. C., for ICC.

Hansell, Post, Brandon & Dorsey, Atlanta, Ga., and Grove, Jaskiewicz & Gilliam, Washington, D. C., for intervenor.

Before MORGAN, Circuit Judge, and EDENFIELD and ALBERT J. HENDERSON, Jr., District Judges.

EDENFIELD, District Judge:

Plaintiffs in this action are carriers seeking to enjoin, set aside, and annul orders of the Interstate Commerce Commission (hereinafter referred to as the ICC or the Commission) granting temporary authority to defendant-intervenor Equipment Transport to transport steel over irregular routes from points in South Carolina to all states east of the Mississippi, including Louisiana.

Plaintiffs Superior Trucking and Home Transportation are Georgia corporations and plaintiff Moss Trucking is a North Carolina corporation, all of whom transport steel over single and interline service within the area now served by Equipment Transport under its temporary authority. Prior to receipt of temporary authority, Equipment Transport's predecessor, Heavy Duty Haulers, had been operating for some time under the incorrect assumption that it had the authority to transport steel to the points now served under its temporary authority. The ICC interpreted Heavy Duty's operating authority to exclude the transport of steel and issued a cease-and-desist order prohibiting the continued transport of that commodity. *Heavy Duty Haulers, Inc. Investigation of Operations*, 99 M.C.C. 578. Heavy Duty Haulers obtained a temporary restraining order pendente lite, thus staying the effect of the cease-and-desist order pending review. During the period of review, Heavy Duty continued to ship steel. While the matter was pending before a United States district court in South Carolina, Equipment Transport acquired Heavy Duty Haulers. After the district court upheld the Commission's cease-and-desist order, *Heavy Duty Haulers, Inc. v. United States*, 293 F.Supp. 879 (D.S.C., 1968), Equipment Transport obtained another temporary restraining order pending a hearing on a motion for a stay pending further Commission action. The motion for a stay was denied November 21, 1968, *Heavy Duty Haulers, Inc. v. United States*, 293 F.Supp. 887 (D.S.C., 1968), and the Commission's order became final.

On November 12, 1968, shortly before the order became final, Equipment Transport filed its application for the temporary authority, and included statements of support from thirteen shippers. Notice of their application was published in the Federal Register on November 22, 1968, and protests were filed

with the ICC by several carriers, including plaintiffs. Subsequently, three of the supporting shippers submitted additional detailed letters. On January 6, 1969, the Temporary Authorities Board of the Commission approved Equipment Transport's application for temporary authority finding that there was an immediate and urgent need for the motor carrier service and that no carrier was available to meet the need. On January 21, 1969, plaintiffs filed a petition to stay the effective date of the Board's order until their petitions for reconsideration of the January 6, 1969 order, then in preparation, could be acted upon by the ICC. On January 27, 1969, the Commission, through Commissioner Murphy, denied the stay without prejudice to filing of the petitions for reconsideration, all of which were subsequently filed by January 30, 1969. On January 30, plaintiffs sought and obtained from this Court, sitting as a single judge, an ex parte temporary restraining order as to the Commission's grant of temporary authority. On February 11, 1969, Equipment Transport filed its motions for leave to intervene and to dissolve this Court's temporary restraining order, which were granted after a hearing at which several supporting shippers testified. By an order served February 25, 1969, the ICC reinstituted the effective date of their original order granting temporary authority, this Court having dissolved its restraining order. On February 17, 1969, plaintiffs pursued their administrative remedies by filing a petition with the Commission requesting an investigation, denial of the temporary authority, and a cease-and-desist order against Equipment Transport based upon the alleged "long history of unlawful operations" by Equipment Transport. By an order of April 4, all of the plaintiffs' petitions were denied by the Commission, acting as an Appellate Division. The parties are in agreement that the plaintiffs have exhausted their

administrative remedies and that this case is ripe for review. This Court, convened as a three-judge court, held a hearing on this case April 16.

While the legal path leading up to this point may seem long and winding, the issue before us is clear. The sole question is whether, under proper standards, the Commission's grant of temporary operating authority to Equipment Transport to ship steel in the area in question, is supportable on judicial review.[1] Plaintiffs urge that the Commission's grant of temporary authority can only be supported on review by a finding of substantial evidence in the record. In addition, they contend that the Commission acted arbitrarily and capriciously by ignoring its own regulations, disregarding Equipment Transport's past unlawful operations, and violating a clear statutory directive.

## I. ADEQUATE EVIDENCE IN THE RECORD TO SUPPORT ICC ORDER

The standard of review of temporary authority orders has caused a great deal of judicial consternation. A triad of statutes apply in making the determination of the proper scope of review. First, § 210a(a) of the Transportation Act, § 310a(a) of Title 49, provides, in relevant part, that:

"(a) To enable the provision of service for which there is an immediate and urgent need to a point or points or within a territory having no carrier service capable of meeting such need, the Commission may, *in its discretion* and without hearings or other proceedings, grant temporary authority for such service by a common carrier or a contract carrier by motor vehicle, as the case may be." (Emphasis added.)

Second, § 10 of the Administrative Procedure Act, 5 U.S.C. § 701(a), which sets out those administrative situations subject to judicial review, precludes re-

---

1. Equipment Transport has an application for permanent authority before the Commission, but this proceeding is irrelevant to the question before the Court.

view of action committed to agency discretion. As it states:

"(a) This chapter applies, according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law."

Last, 28 U.S.C. § 1336 seems to confer jurisdiction on courts to review any orders of the Commission, by providing that:

"(a) Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, enjoin, set aside, annul or suspend, in whole or in part, any order of the Interstate Commerce Commission."

It is clear that the phrase "except as otherwise provided by Act of Congress" does not refer to § 10 of the Administrative Procedure Act, but rather was "inserted because of similar cases of which the courts of appeals are given jurisdiction." Reviser's Note to § 1336.

Faced with these seemingly conflicting statutes, some courts have held that they are without power to review the Commission's decisions on temporary authority questions. They reason that § 10 of the Administrative Procedure Act precludes judicial review of decisions committed, as are temporary authority decisions under § 310a, to agency discretion. See, *e.g.*, J-T Transport Co. v. United States, 191 F.Supp. 593 (W.D. Mo., 1961); Union Cartage Company v. United States, 244 F.Supp. 1005 (D.Mass., 1965). However, even those cases might permit judicial review of any action by the Commission outside its jurisdiction. As the Court in *J-T Transport* stated:

"So long as Division 1 [of the ICC] did not exceed its jurisdiction, its reason for 'revoking', i.e. its denial of J-T's application for temporary authority, is not subject to judicial review for an error either of fact or law which induced it to reach that conclusion." 191 F.Supp. at 600.

Despite this line of cases, it is generally accepted today that because of the grant of jurisdiction under 28 U.S.C. § 1336, Hussey v. United States, 271 F. Supp. 650 (N.D.Cal., 1967) and the resultant equitable power left to the district courts, even over temporary authority orders, Roadway Express, Inc. v. United States, 263 F.Supp. 154 (N.D. Ohio, 1966) the federal district court in a case such as ours, may exercise judicial review. Three "I" Truck Lines, Inc. v. Interstate Commerce Commission, 246 F.Supp. 410 (N.D.Iowa, 1965). Indeed, the Government and the Commission do not dispute the Court's power of judicial review here. As they state in their joint brief, "Plaintiffs argue at some length that Commission temporary authority decisions are subject to judicial review. * * * With this we do not quarrel." (Defendant's Brief, at pp. 3–4.)

While the Court will exercise judicial review, our scope of review is limited. Plaintiffs cite no authority, nor do we know of any, to support their proposition that the Commission's temporary authority order must be supported by substantial evidence to be upheld. As one court put it, in a closely related context:

" * * * [A]ll of the reported cases involving a review of a temporary authority, such as the one involved in this case, have held that the Commission's findings do not have to be based upon substantial evidence, but that it is sufficient if there is any evidence to support the exercise of discretion * * *." Merchants Delivery Co. v. United States, 253 F. Supp. 596, 597 (W.D.Mo., 1966).

Indeed, the very purpose of § 310a(a) is to provide summary procedures for the disposition of applications for temporary authority, as shown by the fact that the ICC may act without "hearings or other proceedings." From the statutory latitude given the ICC under § 310a(a), and the temporary nature of the decision, it seems obvious that grants of temporary authority should

not have to pass the same judicial muster as permanent orders. Therefore, in order to uphold the Commission's decision, we need find only some evidence in the record, so the Commission cannot be said to have acted arbitrarily and capriciously or to have abused its discretion. Substantial evidence in the record is simply not required to uphold the grant of a temporary authority. Hussey v. United States, supra; Merchants Delivery Co. v. United States, 265 F.Supp. 669 (W.D.Mo., 1967); Roadway Express, Inc. v. United States, supra; Bowen Transports, Inc. v. United States, 116 F.Supp. 115 (E.D.Ill., 1953).

Plaintiffs cite Acme Cartage Co. v. United States, 290 F.Supp. 453 (W.D. Wash., 1968), and Black Ball Freight Service v. United States, 298 F.Supp. 1006 (W.D.Wash., 1969), for the proposition that both urgent need and a lack of presently existing service to meet the need must be supported by substantial evidence before the Commission's discretionary power is invoked. In Acme Cartage the Court said that the ICC may exercise its discretion:

> "* * * [O]nly when both of the two conditions specified in the statute [49 U.S.C. § 310a(a)] are shown, i.e. (1) 'an immediate and urgent need * * * [for] service' (2) 'within a territory having no carrier service capable of meeting such need.' When both conditions exist, the statute provides for wide latitude in the exercise of the discretion ICC may exercise in granting temporary authority applications. However, before ICC can exercise that discretion it is clear from the language of the statute that concurrent existence of both conditions (1) and (2) is mandatory and absent either one of the conditions ICC has neither power nor discretion to grant temporary authority applications."

Taken as plaintiffs seem to interpret this language, it would imply a different, and higher, standard of review for the two crucial components of the Commission's temporary authority grant, than for review of the final discretionary decision. Surely Acme Cartage and Black Ball could not create this anomalous situation. Nowhere in either opinion does the Court state that substantial evidence is necessary to establish an urget and unmet need. In both cases the Court confronted a situation in which no evidence existed in the record to support the Commission's findings. Given such a situation, of course, the temporary authority grant was indefensible; to rule otherwise would be to vest in the Commission unbridled discretion in the area of temporary authorities. In the instant case, on the other hand, it cannot be seriously argued that there is a complete absence of evidence to support the Commission's findings. Thus, not only are the plaintiffs' citations distinguishable, but they do not establish a substantial evidence test for granting of temporary authority.

Under the test we follow, we hold that the Commission's finding that there was an "immediate and urgent need" for Equipment Transport's service "within a territory having no carrier service capable of meeting such need", is supported by some evidence in the record.

First, the Commission had before it the fact that a service maintained for several years by Equipment Transport and its predecessor was suddenly terminated by a final decision on the Commission's cease-and-desist order prohibiting further transport of steel. Therefore, numerous shippers who had sent steel with Equipment Transport suddenly found themselves without their services. The Commission could reasonably have determined that this situation alone created an "immediate and urgent need" for service. The Commission's regulations state as much; as 49 C.F.R. § 1131.4(b) (2) puts it, in relevant part:

> "(2) Immediate and urgent need. An immediate and urgent need justifying a grant of temporary authority will be determined to exist only where it is established that there is or soon will be an immediate transportation need which reasonably cannot be met

by existing carrier service. Such a showing may involve * * * a discontinuance of existing service.

\* \* \* \* \* \* "

Second, the ICC had before it the supporting statements of thirteen shippers, filed with Equipment Transport's application for temporary authority. These constitute the necessary evidence to support the Commission's findings. Plaintiffs have created an elaborate chart intended to show that practically none of the supporting statements indicate any attempt to obtain service from existing carriers. Therefore, they urge that the Commission acted arbitrarily in concluding, under the prerequisite of § 310a(a) that there was "no carrier service capable of meeting such [immediate and urgent] need." Taken as a whole, these supporting statements constitute some evidence upon which the Commission could have found no adequate existing service. Every shipper mentioned, either directly or indirectly, showed the need for immediate service to avoid accumulation of penalties for delayed shipments to their customers. These penalties, often severe, are inflicted for late delivery, due to completion requirements on the contractor and the necessity of hiring cranes and other machinery to unload the steel delivered. Plaintiffs urge that they are only required to meet the reasonable needs of the shippers and that some delay in affording shippers the necessary equipment is permissible. However, the shippers make it obvious that they can afford no delays and need the immediate service which they contend *only* Equipment Transport provides. The urgency of their need was aggravated, as shown, by the cease-and-desist order against Equipment Transport. The statements catalog the efforts made, without success, to secure plaintiffs' services. Congaree Iron and Steel Company stated that although they have used Moss Trucking and Home Transportation on occasion, neither generally has had sufficient equipment of the type required at the times and places needed. Congaree gives specific dates when Home Transportation was called for service and also states that Moss was called on numerous occasions. Owen Joist Corporation stated, in a November 4, 1968, communication that it had contacted all of the plaintiffs over the past few days but none had the necessary equipment presently available. Owen Steel Company stated, in a December 11, 1968, letter that it had called plaintiffs but none had trailers at present. Dixiana Steel Company stated that they were unable to use Superior Trucking, one of the plaintiffs, due to the unavailability of the necessary equipment, and Moss due to their remote location. Owen Electric Company stated that both Superior and Home Transportation advised them that it would be one week or longer before they could furnish the necessary equipment, and that while on occasion Home Transportation furnished some units, they did not have enough to handle Owen Electric's requirements. Owen Miscellaneous Metals, Inc. contended there was no specialized carrier within 100 miles of its plant, with the exception of Equipment Transport. Kline Iron and Steel Company and Allcraft Steel Company both stated they did no business with Superior in 1968 because of the unavailability of their service. R.B.M. Metals Company stated that to its knowledge only Equipment Transport had the equipment to serve their needs, and Colonial Iron Works, Inc. and Steel Specialty Corporation said much the same thing. All of the shippers spoke highly of Equipment Transport's ability to meet their needs. Taken together, these statements constitute, at the very least, some evidence upon which the Commission could have determined that an "immediate and urgent need" existed for Equipment Transport's services "within a territory having no carrier service capable of meeting such need." The fact that some of the letters may seem less than models of clarity and somewhat repetitive in their rhetoric goes only to the weight accorded them, not to their legal suffi-

ciency. *Roadway Express,* supra, 263 F.Supp. at 158.

## II. ICC DID NOT ACT ARBITRARILY OR OUTSIDE ITS JURISDICTION AND COMMITTED NO ERRORS OF LAW

Having decided that there was sufficient evidence in the record to support the Commission's decision, the Court's next inquiry is whether the ICC acted arbitrarily and capriciously, outside its jurisdiction, or committed any errors of law. Plaintiffs make several allegations in this regard. First, they contend that the Commission ignored its own regulations in approving Equipment Transport's application. They urge that by failing to meet the requirements of 49 C.F.R. 240.2(c) (8), (9), neither urgent need nor unavailability of existing service could be established under 49 U.S.C. § 310a(a). Plaintiffs feel that 49 C.F.R. 240.2(c) (8), (9) is "mandatory" and binding on the ICC. This regulation provides, in relevant part, that:

> "Each application for temporary authority must be accompanied by a supporting statement(s) designed to establish an immediate and urgent need for service which cannot be met by existing carriers. * * * Any such supporting statements must contain at least the following information:
>
> * * * * * *
>
> "(8) Whether efforts have been made to obtain the service from existing motor, rail, or water carriers, and the dates and results of such efforts.
>
> "(9) Names and addresses of existing carriers who have either failed or refused to provide the service, and the reasons given for any such failure or refusal."

There is a great deal of doubt whether the regulation in question is binding on the Commission or merely states general guidelines for the Commission's own benefit. It has often been said that an administrative agency is not a slave of its own rules, in the absence of injury or substantial prejudice to the complaining party, Sun Oil Co. v. Federal Power Commission, 256 F.2d 233 (5th Cir., 1958), cert. denied, 358 U.S. 872, 79 S. Ct. 111, 3 L.Ed.2d 103 (1958), and that an agency may relax or modify its rules, absent prejudice. National Labor Relations Board v. Grace Co., 184 F.2d 126 (8th Cir., 1950); National Labor Relations Board v. Monsanto Chemical, 205 F.2d 763 (8th Cir., 1953). One court has actually stated, by way of dictum, that 49 C.F.R. 240.2(c) is merely designed to facilitate the Commission's handling of request for temporary authority. As the Court put it:

> "A reading of these rules indicate that their purpose is to facilitate the Commission's handling of requests for temporary authority. The rules reflect no intention to reduce or relinquish its statutory discretionary power to issue certificates of temporary authority." *Roadway Express, Inc.,* supra, 263 F.Supp. at 159.

There is a great deal of logic to this position. The regulations were designed to facilitate the Commission's findings of an urgent and unmet need; if facts supporting these findings exist in the record, the fact that the regulations were not strictly followed should be irrelevant. It is particularly inappropriate to strictly bind an agency to regulations made under a statute designed to encourage summary procedures. The Commission's regulations should not be read to impose more rigid standards on the grant of a temporary authority than the summary procedures envisioned by § 310a(a) of the statute. Moreover, the detailed nature of the information requested in subsections (8) and (9) of the regulation would, in effect, require shippers to keep continuous records of every call they made to carriers, if the plaintiffs are correct in their interpretation. This could hardly be expected of shippers, especially when there would be no reason to think in advance that such detailed records would ever be of any use. Of course, it would help the ICC if such data were available, and it is for this reason that they have included such a request in their regulations. But to

think that such requests, if not possible of fulfillment, should void a proceeding *ipso facto* would be to effectively eliminate temporary authorities.

█ It is true that there are numerous cases stating clearly that agency regulations have the force of law and are binding on the agency as well as on the applicants acting under the regulations. See, *e.g.*, Mississippi Valley Barge Line Co. v. United States, 252 F.Supp. 162 (E.D.Mo., 1966), dismissed, Pittsburgh Towing Co. v. Mississippi Valley Barge Line Co., 385 U.S. 32, 87 S.Ct. 195, 17 L.Ed.2d 31 (1966); Columbia Broadcasting System v. United States, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563 (1942); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); McKay v. Wahlenmaier, 96 U.S.App.D.C. 313, 226 F.2d 35 (1955). However, these decisions found either substantial prejudice to one party from the agency's failure to follow its rules or a tainted proceeding due to wilful disregard of crucial regulations. In our case, however, there can be no prejudice to the plaintiffs from the Commission's alleged failure to follow subsections (8) and (9), since there is some evidence in the record to support the Commission's decision. Resolution of this thorny issue may lie in deciding whether or not 49 C.F.R. 240.2(c) is an interpretative or a legislative regulation. See Davis, *Administrative Law Treatise*, § 5.03, at 299.

We need not resolve this problem, for we find substantial compliance with the regulations. Almost without exception the shippers' supporting statements include some indication of their inability to receive prompt and adequate equipment and service from plaintiffs. As previously noted, many specifically mention efforts to contact some or all of the plaintiffs. See, e.g., statements of Con-garee, Owen Joist, Owen Steel, Dixiana, Owen Electric, Kline Iron and Steel, and Allcraft. Moreover, Congaree, Owen Joist, and Owen Steel give approximate or specific dates upon which requests for service were made. This evidence in the record clearly constitutes reasonable compliance with subsections (8) and (9). To require anything more would be to impose an unrealistic burden on both the Commission's summary procedures, under 49 U.S.C. § 310a(a), and on the supporting shippers. Our conclusion is supported by Estes Express Lines v. United States, 292 F.Supp. 842 (E.D. Va., 1968), aff'd, 394 U.S. 718, 89 S.Ct. 1469, 22 L.Ed.2d 673 (1969), *per curiam*. There the plaintiffs, seeking to annul orders of the Commission granting Railway Express a temporary authority, urged that the shippers' statements in support of Railway Express' application lacked the requisite particularity under 49 C.F.R. 240.2(c) (8), (9). The Court held that the regulation was reasonably satisfied when the shippers explained why they made no effort to obtain express service from existing carriers and that the statements were sufficiently particularized to alert the Commission to the continuing needs of the shippers. Yet the statements accepted in that case were much less explicit than those before the Commission in the instant action.[2]

█ Plaintiffs urge that *Acme Cartage*, supra, and *Black Ball*, supra, demand a different result. Both those cases found that the ICC acted arbitrarily by ignoring compliance with subsections (8) and (9) without good cause. However, as seen earlier, there was no evidence in either case that any shipper had requested service from any plaintiff, and therefore the statutory requirements of 49 U.S.C. § 310a(a) were unmet. The Court in those cases merely

---

2. Each one of the shippers said: "I am currently obtaining the service I need from REA Express, and accordingly, have had no occasion to seek express service from anyone else. Within my knowledge, however, no service other than that of REA possesses all of the special characteristics required for adequate handling of my express shipments. If REA service became unavailable, I would have an immediate and urgent need which no other carrier would meet."

made it clear that compliance with the regulations was necessary where no other evidence was present. It does not touch a case such as ours where there is both other evidence in the record and substantial compliance with the regulations. When there *is* other evidence in the record, *Acme* requires, at most, only "Enforcement of reasonable compliance with these particular provisions." 290 F.Supp. at 457. The shippers' statements in our case met the standard of reasonable compliance with 49 C.F.R. 240.2(c) (8), (9).

Plaintiffs also allege that the Commission acted arbitrarily by granting the temporary authority, despite Equipment Transport's "long history of unlawful operations." As earlier shown, Equipment Transport's predecessor had been transporting steel for many of these shippers under the assumption it was authorized to do so. It was not until November, 1968, that Equipment Transport was finally prohibited from shipping steel, due to various stays of the ICC's cease-and-desist order. During the period that the order was stayed, Equipment Transport's actions were permissible. Plaintiffs contend that 49 C.F.R. 240.4(b) (8) bars acceptance of Equipment Transport's application for temporary authority, by providing, in relevant part, that:

"(8) *General bases for disapproval.*

Applications for temporary authority *may* be denied for the following reasons:

\* \* \* \* \* \*

(ii) Unfitness of the applicant." (Emphasis added.)

The language of § 240.4(b) (8) is permissive and merely permits the Commission to deny an application for temporary authority on a finding of unfitness. In our case, there is no reason to think that the previous activities of Equipment Transport show such bad conduct as to merit a finding of unfitness. The transport of steel was permissible during the pendency of the case in the courts

and the ultimate adjudication against the predecessor of Equipment Transport does not in and of itself establish unfitness. The Commission was possessed of all the facts here but it rejected plaintiffs' contentions. There is no reason in the record to upset its findings.

Plaintiffs' last contention is that the Commission acted arbitrarily by violating 49 U.S.C. § 17(8), which provides that:

"Where application for rehearing, reargument, or reconsideration of a decision, order or requirement of a division an individual Commissioner, or board is made in accordance with the provisions of this section and the rules and regulations of the Commission, and the decision, order, or requirement has not yet become effective, the decision, order, or requirement shall be stayed or postponed pending disposition of the matter by the Commission or appellate division; but otherwise the making of such an application shall not excuse any person from complying with or obeying the decision, order, or requirement, or operate to stay or postpone the enforcement thereof, without the special order of the Commission."

Plaintiffs filed motions to reconsider the Commission's initial grant of temporary authority and contend that the grant should have been stayed until their petitions for reconsideration were acted upon. There are two answers to this contention. First, the issue is mooted by the April 4, 1969, decision of the ICC overruling the petitions for reconsideration; even if the Commission had stayed the initial grant pending determination of the plaintiffs' petitions, that stay would now have expired due to the April 4 decision on the petitions. *Cf.,* A.B. & C. Motor Transportation Co. v. United States, 151 F.Supp. 367, 372 (D.Mass., 1956). Second, the purpose behind the grant of a temporary authority would be undercut if the mere filing of a petition for reconsideration could stay its effect. It is with this in mind that the ICC promulgated 49 C.F.R.

240.6(c). It provides, in relevant part, that:

"The filing of a petition for reconsideration of an order of Division 1 or the Temporary Authorities Board does not have the effect of automatically staying such order."

Plaintiffs contend that this regulation is invalid as violative of the statutory mandate of § 17(8). However, the Court finds that 49 C.F.R. 240.6(c), in effect, carries out the mandate of 49 U.S.C. § 310a(a), carving out an implicit exception to § 17(8).

## III. CONCLUSION

The Court, having determined that there was, at the very least, some evidence to support the Commission's determination of urgency and unavailability of existing service, and having found no errors of law or activities by the ICC contrary to its statutory authority, affirms the Commission's grant of temporary authority and denies the plaintiffs' motion to annul.